WILLIAM H. TRIPP *v.* NORTHWESTERN NATIONAL BANK.

August 12, 1889.

**Corporation—Assignment in Insolvency.**—The insolvent law of 1881 *held* applicable to private corporations. The board of directors of a corporation may authorize an assignment by the corporation under that act when the conditions specified in the act exist.

Appeal by plaintiff, as assignee in insolvency of the Empire Coffee & Spice Company, from a judgment of the district court for Hennepin county, rendered on the pleadings pursuant to an order of *Rea, J.*

*Miller, Young & Akers,* for appellant.

*Keith, Evans, Thompson & Fairchild,* for respondent.

DICKINSON, J.[1] This is an appeal by the plaintiff from a judgment in favor of the defendant, entered by order of the court upon the pleadings. The plaintiff prosecutes the action as the assignee of an insolvent corporation, the assignment having been made under the insolvent law of 1881, (chapter 148.) The object of the action is to recover certain money paid to the defendant by the insolvent corporation about two weeks prior to the assignment, in payment of a preexisting debt. This payment is claimed to have been an unlawful preference of this one creditor, contrary to the provisions of the insolvent law.

---

[1] Vanderburgh, J., did not sit in this case.

The principal question requiring our consideration is whether corporations are within the provisions of, and may make assignments pursuant to, the insolvent law of 1881.   Upon the bare construction of the act itself, we deem it fairly doubtful whether or not the law should be deemed to embrace corporations within its provisions. While some reasons may be and are urged in opposition to a construction making the law applicable to corporations, on the other hand there are reasons which fairly support such a construction. The language of the act, which applies to "any debtor" and to "any debtor, being insolvent," is sufficiently broad to include corporations; especially in view of the fact that a very large part of the ordinary business of the state, in its various branches, is being carried on by corporate organizations; nor is there in the language of the act any apparent limitation upon the ordinary scope and meaning of these words.   Again, if we look to the purposes of the law, and the evil to which it may be supposed to have been directed, we discover reasons which favor the conclusion that the scope of the act was intended to be as broad as the language employed would ordinarily import. One of the principal purposes of the law, expressed in its title and for the accomplishment of which its provisions were obviously framed, was that of preventing insolvent debtors from preferring some creditors to the exclusion of others, and of securing an equal distribution of the property of such debtors among all their creditors.   The evil thus indicated was as apparent in connection with the operations of corporations created for merely private gain, under our very liberal general laws allowing corporate organization for carrying on almost all kinds of business, as in the case of natural persons and partnerships.   There was no law preventing such corporations, although insolvent, from employing their assets in paying preferred creditors to the exclusion of all others, and such preferences when made could not be avoided.   This reason for the enactment of the law may well be deemed to have been in the mind of the legislature in framing the act in terms sufficiently comprehensive to include such corporations.

While we do not regard these considerations as sufficient to exclude doubt as to the proper construction of the act, we think that

the contention that the act was intended to be applicable to corpora‧ tions is reasonably supported; and, since the intention of the legislature is not clearly disclosed, we are not at liberty to disregard the practical construction which has been put upon the law for many years, and in which the legislature seems to have acquiesced. During the more than eight years that have passed since the law was enacted it has been no dead letter, as the numerous decisions of this court in cases growing out of its enforcement attest. It may be safely said that during all that period the law has generally been regarded and taken, as a matter of course, by both the bar and the bench, as applicable to corporations. Five causes at least have come into this court prior to that now before us, involving various questions relating to the administration or effect of this statute as to corporations. In all of them the applicability of the act to corporations was assumed without question. The published decisions of this court, commencing as early as September, 1885,—*Nat. Exchange Bank* v. *Wilder*, 34 Minn. 149, (24 N. W. Rep. 699,)—gave publicity to the fact that the law was being so applied; and this may be presumed to have become also generally known from the practical operation of the law throughout the state. Yet in none of the several sessions of the legislature which have been held since this effect was given to the statute has it been changed in this particular, although several amendments have been made. It is fair to assume that if in the administration of the law the intention of the legislative department in so important a matter was being thus misinterpreted, such amendment would have been made as would have made the intention clear. It is probable that, under the statutes thus construed and enforced, titles have become vested which would be avoided if an opposite construction should be now put upon the law from that which seems to have hitherto been applied and accepted. In view of the impossibility of determining with certainty from the terms of the act what may have been the intention of the legislature, this consideration is not to be disregarded. Our conclusion is that the statute is to be construed as being applicable to corporations created for the purposes of mere private gain. Concerning the argument which is urged against this construction, based upon the proposition that a release of the corpo-

ration under this statute would discharge also the personal liability of stockholders, we will only say that the legislature has already made provision to prevent the hardship to the creditor thus suggested. In Laws 1889, *c.* 30, § 1, it is provided that "the release of any debtor under this act shall not operate to discharge any other party liable as surety, guarantor, or otherwise for the same debt."

It is contended that the assignment in this case was void because it was not authorized by the stockholders, but only by the board of directors, and because even the authority given by the directors was only to make an assignment for the equal benefit of all creditors without preferences, no more specific direction being given. The weight of authority seems to be in favor of the proposition that the board of directors of a corporation, to which the general management of its affairs is committed without particular restriction, may authorize a general assignment of the corporate property to be made for the benefit of creditors when the condition of its affairs is such as to reasonably justify such a course, as in the case of insolvency. *Sargent* v. *Webster,* 13 Met. 497; *Dana* v. *Bank of U. S.,* 5 Watts & S. 223; *Ardesco Oil Co.* v. *North American Mining Co.,* 66 Pa. St. 375; *Merrick* v. *Trustees,* 8 Gill. 59; *De Camp* v. *Alward,* 52 Ind. 468. However that may be, if, as we have held, the insolvency law of 1881 is applicable to corporations, we are of the opinion that in the cases specified in that law as the conditions for making an assignment, the directors of a corporation may authorize an assignment to be made in accordance with that law; and that the authorization in this case was sufficient, although it did not expressly indicate that the assignment should be made in accordance with this statute. The complaint shows the existence of those conditions contemplated by the statute, and that the corporation duly made the assignment under and in accordance with this law. This must be deemed to have been admitted for the purposes of the motion for judgment on the pleadings. But, aside from this, the resolution of the board of directors should be considered in the light of the circumstances under which it was made; and if the conditions were such as the act of 1881 contemplates, and if the corporation, being insolvent, had made preferential payments which, in accordance with the spirit and purposes of that law, ought

to be avoided for the equal benefit of all the creditors, the resolution should be deemed to have authorized such an assignment as was in fact made, in accordance with the provisions of that law. It is therefore considered that the order for judgment on the pleadings was erroneous.

Judgment reversed.