ELIZABETH L. WILLIS *vs.* E. L. MABON, ST. PAUL SANITATION CO., *et al.*

Argued Nov. 5, 1891. Decided Jan. 18, 1892.

**Stockholders' Liability for Corporate Debts.**—Article ten, (10,) section three, (3,) of the constitution, providing that "each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him," is self-executing, and creates an individual liability on the part of the stockholder for corporate debts to an amount equal to the amount of stock held or owned by him.

**Subject of an Act Expressed in Its Title.**—The subject of Laws 1889, ch. 30, amending the insolvent law of 1881, is sufficiently expressed in its title.

**Discharge of Insolvent Corporation does not Release Stockholder.**—The provision in section one (1) of this amendatory act, "that the release of any debtor under this act shall not operate to discharge any other party liable as surety, guarantor, or *otherwise* for the same debt," includes stockholders who are liable for the debts of the corporation.

**Act Constitutional.**—This provision is not unconstitutional, as applied to cases where the liability of the stockholder was incurred before, but the proceedings under the insolvent act were had and the corporation discharged subsequent to, its passage.

Appeal by defendant E. L. Mabon from an order of the district court, Ramsey county, *Brill,* J., made January 6, 1891, sustaining plaintiff's demurrer to his answer.

The St. Paul Sanitation Company, a trading or business corporation, created under 1878 G. S. ch. 34, § 109, was on July 17, 1889, on petition of creditors, adjudged insolvent, and a receiver of its property appointed, pursuant to Laws 1881, ch. 148, as amended by Laws 1889, ch. 30. The receiver converted its assets into money, and paid a dividend to those of its creditors who proved their claims and filed releases. The plaintiff proved her claim, and filed her release of the corporation, and received her dividend, and judgment was entered in the insolvency proceedings in January, 1890, discharging the corporation from all claims and debts held by her.

The defendants E. L. Mabon, Gilbert Donaldson, and B. F. Ellison were each holders of stock of this corporation. After it was discharged, the plaintiff brought this action, September 22, 1890, against these stockholders, to recover the balance of her claim, $1,073.08, and interest, under 1878 G. S. ch. 76, § 17 et seq.

The defendant Mabon answered, and set forth the discharge of the corporation in the insolvency proceedings. The plaintiff demurred to this answer, that it did not state facts sufficient to constitute a defense. The district court sustained the demurrer, on the ground that the proviso at the end of section one (1) of chapter thirty, (30,) Laws 1889, was intended to change the rule laid down in *Mohr* v. *Minnesota Elevator Co.*, 40 Minn. 343.

*James H. Foote,* for appellant.

*First.* Resting on the principle that a demurrer reaches back to the first pleading, the appellant contends that this action cannot be maintained against him as a stockholder, for the following reasons: Under the law there can be no double liability of stockholders in corporations of this character, for the reason that article ten, (10,) section three, (3,) of the state constitution, is not self-executing, and there is no statute imposing such a liability. In considering this question it will be instructive to glance first at the constitutional and legislative history of this state in the matter of the liability of stockholders. 1851 R. S. ch. 40, §§ 11, 12, 16; Const. art. 10, § 3; Amend. Laws 1872, ch. 12; 1858 P. S. ch. 17, §§ 299, 300, 315, 318, 321; 1866 G. S. ch. 34, § 9; Laws 1876, ch. 2; Laws 1878, ch. 56; Laws 1881, (Ex. Sess.) ch. 73.

The attention of the court is now invited to a consideration of the decisions of various courts on the question of self-executing constitutional provisions, for the purpose of getting at the principles on which the question has been decided. *Morley* v. *Thayer,* 3 Fed. Rep. 737; *Groves* v. *Slaughter,* 15 Pet. 449; *Missouri, K. & T. Ry. Co.* v. *Texas & St. L. Ry. Co.*, 10 Fed. Rep. 497, 503; *Brown* v. *Hitchcock,* 36 Ohio St. 667; *Bowie* v. *Lott,* 24 La. Ann. 214; *Fusz* v. *Spaunhorst,* 67 Mo. 256; *French* v. *Teschemaker,* 24 Cal. 518; *Larrabee* v. *Baldwin,* 35 Cal. 155; *Lehigh Iron Co.* v. *Lower Macungie*

*Tp.*, 81 Pa. St. 482; *Coatesville Gas Co.* v. *Chester Co.*, 97 Pa. St. 476.

A consideration of the foregoing cases shows that the following fundamental principles have been recognized by the courts as controlling: Constitutional provisions may be considered as self-executing: (1) When the object is to suppress an existing evil. (2) When the purpose is to prohibit or restrain action. (3) When they specify the powers of some branch of the government or of some officer. (4) When they are full and explicit, both as to subject-matter and to the manner in which they shall be enforced.

Constitutional provisions are not to be considered as self-executing: (1) When the provision points to something more to be done, and looks to some future time for the accomplishment of what is required. (2) When they fail to show that the framers regarded them as sufficient to accomplish the end in view, and when no attempt is made to provide any *modus operandi* for its accomplishment. (3) When they can operate only by affirmative action of private parties, and come in conflict with other private interests. (4) When no penalty or nullity is provided. (5) When they are in the nature of general directions addressed to the legislature, announcing a new policy.

In 1866 G. S. ch. 34, § 9, the legislature for the first time accorded a slight recognization to the constitutional provision regarding the personal liability of stockholders, but the chapter was, by its terms, applicable only to certain specified kinds of corporations. And even this lasted only until 1875, when the section imposing the liability on such corporations in the terms of the constitution was repealed. Laws 1875, ch. 15. This left the law as it stands to-day, expressed in 1878 G. S. ch. 34, § 9. By this there are three classes of cases in which stockholders can be held liable for corporate debts: (1) For unpaid installments. (2) For failure of the corporation to comply substantially with the statutory provisions as to organization and publicity. (3) For personal violation of any of the provisions of the statute in the transaction of any business of the corporation, as officer, director, or member thereof, or fraud, unfaithfulness, or dis-

honesty in the discharge of official duty. Such, and such only, are the cases in which a stockholder can be held liable.

Up to the present time, this question of the double liability of stockholders has never before been squarely brought before this court. There are several cases in which the constitutional provision has been to some extent considered by the court; but an examination of them discloses the fact that either the question was not involved in the case, or else the liability has been assumed to exist, both by the court and by counsel. *Dodge* v. *Minnesota Plastic Slate Roofing Co.*, 16 Minn. 368, (Gil. 327;) *Allen* v. *Walsh,* 25 Minn. 543; *Mohr* v. *Minnesota Elevator Co.*, 40 Minn. 343; *Arthur* v. *Willius,* 44 Minn. 409; *Densmore* v. *Shepard,* 46 Minn. 54.

*Second.* Does the proviso at the end of section one, (1,) chapter thirty, (30,) Laws 1889, apply to the liability of stockholders to creditors for the debts of the corporation? The appellant claims that it does not. The nature of the liability of the stockholders of a corporation to its creditors was a principal one, and not as a surety for the corporation. The debt is not entered into by the stockholders directly or in a personal capacity, either as principals, sureties, or guarantors. It is the almost universal rule that the liability of stockholders is an original one, and is *ex contractu,* and in the nature of that of general partners. *Corning* v. *McCullough,* 1 N. Y. 47; *Story* v. *Furman,* 25 N. Y. 214; *Norris* v. *Wrenschall,* 34 Md. 492; *Conant* v. *Van Schaick,* 24 Barb. 87; *Fuller* v. *Ledden,* 87 Ill. 310; *Schalucky* v. *Field,* 124 Ill. 617.

It being established, then, that the stockholder is not to be regarded as belonging to the same class of debtors as sureties or guarantors, it necessarily follows, under the universal rule of statutory construction adopted by the courts, that the words, *"or otherwise for the same debt,"* in this proviso, do not refer to the liability of the stockholder. The well-settled rule of construction is that, where particular words are followed by general words, the latter must be considered as *ejusdem generis* with the former, and confined to things of the same kind. *Gunnestad* v. *Price,* L. R. 10 Exch. 65, 70; *Ex parte Spackman,* 1 Macn. & G. 170; *Scaggs* v. *Baltimore & W. R. Co.,* 10 Md. 268; *Hawkins* v. *Great Western Ry. Co.,* 17 Mich. 57;

*Chegaray* v. *Mayor, etc.,* 13 N. Y. 220; *Brooks* v. *Cook,* 44 Mich. 617; *Thames & M. Marine Ins. Co.* v. *Hamilton,* L. R. 12 App. Cas. 484; *Rex* v. *Wallis,* 5 Term R. 375; *State* v. *McCrum,* 38 Minn. 154; *Berg* v. *Baldwin,* 31 Minn. 541; *Kitchen* v. *Shaw,* 6 Adol. & E. 729; *Peate* v. *Dicken,* 1 Cromp. M. & R. 422; *Evans* v. *Stevens,* 4 Term R. 459; *Reg.* v. *Mayor,* 2 Q. B. 693.

*Third.* But if it be held that the proviso contained in the law of 1889 was intended to and does apply to the liability of the stockholders, nevertheless it cannot be held to apply to obligations of stockholders, which, like that of the appellant, were entered into prior to the passage of the amendment. Otherwise the law would be unconstitutional and void, as impairing the obligation of contracts.

*Fourth.* The appellant further claims that Laws 1889, ch. 30, is unconstitutional, for the reason that its subject is not expressed in its title, and does not comply with Const. art. 4, § 27.

*J. C. & W. H. Michael,* for respondent.

*First.* Article ten, (10,) section three, (3,) of our state constitution, imposing a personal liability on stockholders of certain kinds of corporations, is self-executing and operative without supplemental legislation. A re-enactment by the legislature of the language of the constitution would have been a useless formality, and would have added no strength whatever to it. The language in the constitution itself is as strong as could have been used, and *per se* imposes the liability, and all that remained for the legislature to do was to provide a method of procedure for the enforcement of the liability. This it has done in 1878 G. S. ch. 76, which this court has held to provide the exclusive remedy, by reason of the fact that the legislature has pointed out the manner of its enforcement, with which any one seeking the remedy must comply. *Johnson* v. *Fischer,* 30 Minn. 173.

For more than 20 years this court in its decisions has uniformly held such liability to exist by virtue of the self-executing language of the constitution, as supplemented by the procedure for its enforcement provided by the legislature. This was a fact of general notoriety. These decisions date from 1871 down to the present time. Besides the cases cited on this point by appellant, see *Johnson* v.

*Fischer,* 30 Minn. 173; *Merchants' Nat. Bank* v. *Bailey Mfg. Co.,* 34 Minn. 323; *Tripp* v. *Northwestern Nat. Bank,* 41 Minn. 400; *First Nat. Bank* v. *Gustin Minerva Con. Mining Co.,* 42 Minn. 327; *State* v. *Minnesota Thresher Mfg. Co.,* 40 Minn. 213.

This has been the universally accepted construction of this section of the constitution through the long period of 34 years by the entire bench and bar of this state; and during all this time the self-executing feature of the constitution has been in practical application and general enforcement against stockholders throughout the state. *City of Faribault* v. *Misener,* 20 Minn. 396–401, (Gil. 347;) *Ames* v. *Lake Superior & M. R. Co.,* 21 Minn. 241–262.

For an able discussion of the mandatory features of constitutions, and comparison of cases, see *Hunt* v. *State,* 22 Tex. App. 396, (3 S. W. Rep. 233;) *Varney* v. *Justice,* 86 Ky. 596, (6 S. W. Rep. 457;) 3 Amer. & Eng. Enc. Law, 678 *et seq.,* and notes; *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479; *Rothermel* v. *Meyerle,* 136 Pa. St. 250; *Yerger* v. *Rains,* 4 Humph. 259.

*Second.* The word "otherwise," found in the proviso at the end of Laws 1889, ch. 30, § 1, although preceded by the words "surety" and "guarantor," is broad enough to include the personal liability of a stockholder, imposed by the state constitution. Therefore a release of the corporation does not release the stockholders. *Mohr* v. *Minnesota Elevator Co.,* 40 Minn. 343. Just 14 days after the decision in the *Mohr Case* was handed down, and while public discussion was yet rife, the legislature enacted the amendment of 1889. This court in *Tripp* v. *Northwestern Nat. Bank,* 41 Minn. 400, has already construed this amendment to the effect that it is broad enough to cover a stockholder's liability.

The rule of statutory construction, that, where words of specific import are followed by a general term, the general term is to be taken to apply only to persons or things *ejusdem generis* with the specific terms, is one that has been uniformly applied by courts with more rigor in penal than in civil statutes. In the abstract, general words, like all others, receive their full and natural meaning. End. Interp. St. § 405; *Jeffryes* v. *Evans,* 19 C. B. (N. S.) 246; *Foster* v. *Blount,* 18 Ala. 687; *Woodworth* v. *State,* 26 Ohio St. 196.

v.48m.—10

The 3 & 4 Wm. IV. ch. 42, § 3, limited the time for suing upon any bond or other specialty. This was held to comprehend every kind of specialty, including a statute.    *Cork & B. Ry. Co.* v. *Goode,* 13 C. B. 836; *State* v. *Solomon,* 33 Ind. 450; *State* v. *Holman,* 3 McCord, 306; *Woodworth* v. *State,* 26 Ohio St. 196.

This court has said that the relation of stockholder and surety are not the same, but the question of defining the exact relation which stockholders bear to the debts of the corporation has been one of much perplexity, and as yet no apt phrase has been generally adopted to express it.    The question has led to different judicial opinions, wherein courts have honestly differed on the subject.    The following cases hold that the relation is that of a surety, or something so near it that no distinction can be drawn:    *In re Estate of Warren,* 52 Mich. 557; *Moss* v. *Averell,* 10 N. Y. 449, 459; *Belmont* v. *Coleman,* 21 N. Y. 96; *Wheeler* v. *Faurot,* 37 Ohio St. 26; *Hanson* v. *Donkersley,* 37 Mich. 184; *Callanan* v. *Windsor,* 78 Iowa, 193; *Sayles* v. *Brown,* 40 Fed. Rep. 8; *Allen* v. *Fairbanks,* Id. 188.

*Third.* The stockholder's liability is measured and fixed by the state constitution itself, and it is absolutely beyond the power of the legislature to circumscribe, modify, or abridge this liability, in any —the slightest—degree, either directly or indirectly, by an insolvent act or otherwise.    And it matters not whether such law was passed before or after the stockholder became such, for, when he voluntarily assumed that relation, the constitution at once defined the measure and extent of his liability, from which he could only be released by the voluntary act of the corporate creditor.    When the law imposes a liability on stockholders for the corporate debts, no subsequent act of the legislature can relieve them of such liability, so as to affect the rights of existing creditors.    If a liability is fixed by law, when stockholders become such, no subsequent law can increase such liability as to such stockholders.    The legislature may regulate the manner of enforcing the liability by a remedial statute, but such remedy must be commensurate with the right, and must not be an abridgment of it, else the act will be unconstitutional and void.    It then follows that appellant's claim that his constitutional liability was

diminished and modified by the insolvent law of 1881 is unfounded. *Ogden* v. *Saunders,* 12 Wheat. 343.

An insolvent law, if confined within constitutional bounds, goes only to the remedy, and no debtor or creditor acquires vested rights under it until an act of insolvency occurs, and in this case that was on July 17, 1889, when the application for the appointment of a receiver was made. Prior to such insolvency, the legislature may amend or repeal the law at pleasure; and the law which binds both debtor and creditor is the law in force at the time the act of insolvency occurs. *Relfe* v. *Columbia Life Ins. Co.,* 76 Mo. 594; *Bockover* v. *Superintendent Ins. Dept.,* 3 S. W. Rep. 833; *Roosevelt* v. *Kellogg,* 20 Johns. 208–212; *Strueven* v. *His Creditors,* 62 Cal. 45; *First Nat. Bank* v. *Gustin Minerva Consolidated Mining Co.,* 42 Minn. 327.

*Fourth.* To appellant's fourth assignment, a sufficient answer is that, when the legislation contained in the body of the amendatory act is germane to the subject of the original act, the object of such amendment is sufficiently expressed in its title, by a simple reference to the title of the act to be amended; and it will be seen that the amendatory act of 1889, chapter thirty, (30,) quoted *verbatim* the title of the act to be amended. An amendatory act entitled "An act to amend the charter of the city Winona" was held sufficient. *City of Winona* v. *School Dist. No. 82,* 40 Minn. 13.

For amendatory acts with similar titles, under like constitutional requirements, see *Borough of Millvale* v. *Evergreen Ry. Co.,* 131 Pa. St. 1; *Fleischman* v. *Walker,* 91 Ill. 318; *State Line & J. R. Co.'s Appeal,* 77 Pa. St. 429; *State* v. *McCracken,* 42 Tex. 384; *Craig* v. *First Presbyterian Church,* 88 Pa. St. 42; *Dunbar* v. *Frazer,* 78 Ala. 538; *Yellow River Improvement Co.* v. *Arnold,* 46 Wis. 214.

MITCHELL, J. 1. This was an action brought by a creditor of an insolvent corporation to recover from certain of its stockholders on their individual liability for the corporate debts, under what is commonly called "the double liability clause" of the constitution, which provides that "each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him." Article ten, (10) section three, (3.) The prin-

cipal question in the case is whether this provision of the constitution is self-executing, or whether it requires legislation to carry it into effect. The same question is also involved in the two cases of *McKusick* v. *Seymour, Sabin & Co., post,* pp. 158, 172, 50 N. W. Rep. 1114, 1116,)—submitted at a later day of the present term,—and has been exhaustively argued in both cases. Some points were made by counsel in one case that were not urged in the other; but as the question is common to both cases, and as there was an understanding among counsel that all arguments presented in either should be considered in both, we shall endeavor to fully determine the question in the present opinion. In addition to this main question, counsel for the appellants in the first case, *infra,* urged that this constitutional provision is not intended to impose any "double liability" upon stockholders, but simply means that they shall be bound to pay for their stock *once* its "face amount," any device or agreement to the contrary notwithstanding, and that, having once paid for their stock in full, they are not further liable. Except for the eminence of the counsel who have advanced this view, we would not deem it entitled to serious consideration. While no fixed form of words has been adopted to express the idea, yet provisions couched in more or less similar language have been frequently incorporated into constitutions and statutes, and have been uniformly understood and construed as providing for an individual liability of stockholders for corporate debts in addition to this risk of losing the amount of their stock. This is the meaning which has been invariably attached to this provision of our constitution. It is the one attributed to it by this court in numerous cases, although never in the form of a direct and authoritative decision; and we do not believe that the construction now sought to be placed upon it ever occurred to, or was ever advanced by, any one, until suggested by counsel in the present case. Any such construction would render the provision meaningless and useless, for all that would be accomplished by it was already fully covered by the law. If a person had subscribed for stock, and had not paid for it the amount agreed, of course he was liable to the corporation, and, through it, to its creditors; and if the stock had been issued to him as paid-up stock, when not in fact paid for, under such

circumstances as to operate as a fraud upon creditors, he was, upon well-settled principles, liable to them as for unpaid stock subscriptions. The construction contended for would give the public no security beyond what they already had under the existing law. Its absurdity is rendered apparent when considered in connection with the amendment of November 5, 1872, inclosed in parentheses; for then the whole section would mean that, while the stockholders in all other corporations should be liable to pay once for their stock at its face amount, yet stockholders in manufacturing corporations need not be required to do so. The obvious intention of the provision was to add to the ordinary liability of a corporation, for its debts, the individual liability of the stockholders, to a limited amount, and that the measure of that liability should be a sum equal to the amount of stock owned or held by them. This stock is not the *subject* of the liability, but the *measure* of it; in other words, the stockholders are liable, not for the stock, but, in addition thereto, for a sum measured by the amount of the stock.

2. This brings us to the main question, viz., whether this provision of the constitution is self-executing. That such has been the general understanding of the bench, bar, and business men in this state is conceded. This court has, in a long line of cases, assumed that such was the fact. *Dodge* v. *Minnesota Plastic Slate Roofing Co.*, 16 Minn. 368, (Gil. 327;) *Allen* v. *Walsh*, 25 Minn. 543; *State* v. *Minnesota Thresher Mfg. Co.*, 40 Minn. 213, (41 N. W. Rep. 1020;) *Mohr* v. *Minnesota Elevator Co.*, 40 Minn. 343, (41 N. W. Rep. 1074;) *Arthur* v. *Willius*, 44 Minn. 409, (46 N. W. Rep. 851;) *Densmore* v. *Shepard*, 46 Minn. 54, (48 N. W. Rep. 528, 681.) And, so far as we are aware, the correctness of this view has never been questioned or doubted in any court, until one of the counsel in this case interposed a brief in *Arthur* v. *Willius, supra,* in which he took the position for which he now contends. Of course it is true, as counsel suggests, that this court has never before been called on to decide the question, and that mere assumption on the part of either bench or bar does not make a thing law; but, on the other hand, it is also true that a construction which has for a third of a century been accepted by every one as so obviously correct as never to have been questioned or

doubted is much more likely to be right than a newly-discovered one, suggested at this late day by the emergencies of present litigation. The fact that no such view ever before suggested itself to the minds of court or counsel in the numerous cases where the point might have been made, and where it was to the interest of counsel on one side or the other to make it, certainly raises a strong presumption against it.    Moreover, as the generally accepted view has doubtless long been the basis of the credit of corporations, it ought not now to be disturbed, unless clearly wrong.    But, if the question was entirely one of first impression, we have no doubt as to how it should be determined.    A constitution is but a higher form of statutory law, and it is entirely competent for the people, if they so desire, to incorporate into it self-executing enactments.    These are much more common than formerly, the object being to put it beyond the power of the legislature to render them nugatory by refusing to enact legislation to carry them into effect.    Prohibitory provisions in a constitution are usually self-executing to the extent that anything done in violation of them is void.    But instances of affirmative self-executing provisions are numerous in almost every modern constitution.    For instances of this, see *State* v. *Weston,* 4 Neb. 216; *Thomas* v. *Owens,* 4 Md. 189; *Reynolds* v. *Taylor,* 43 Ala. 420; *Miller* v. *Marx,* 55 Ala. 322; *People* v. *Hoge,* 55 Cal. 612.

Without stopping to specify, it will be found on examination that our own constitution abounds in provisions that are unquestionably self-executing, and require no legislation to put them into operation. The question in every case is whether the language of a constitutional provision is addressed to the courts or the legislature,—does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect?    This is to be determined from a consideration both of the language used and of the intrinsic nature of the provision itself.    If the nature and extent of the right conferred and of the liability imposed is fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the legislature for action, then the provision should be construed

as self-executing; and its language as addressed to the courts. In almost every case cited by appellants in which a constitutional provision has been held not self-executing, it will be found either that its language indicated an intention that legislation should be had to carry it into effect, or that the nature of the provision itself was such as to render such legislation necessary. To the first class may be referred the provision in the constitution of Missouri (quite different from that in ours) considered in the case of *Morley* v. *Thayer*, 3 Fed. Rep. 737, although that case really only decided that the plaintiff could not recover because he had not followed the remedy provided by statute. To the same class belongs the case of *Jerman* v. *Benton*, 79 Mo. 148, although it seems to have been assumed, without argument or consideration, that the constitutional provision there considered required legislation to carry it into effect. To the second class belongs *Bowie* v. *Lott*, 24 La. Ann. 214, in which it was held that a constitutional provision that "all lands sold in pursuance of decrees of courts shall be divided into tracts of from 10 to 50 acres," required legislation to carry it into effect. This is plain from the very nature of the provision. It furnishes no *modus operandi*, and does not provide how or by whom the land was to be divided, nor determine the exact size of the tracts. It was evidently a mere general direction to the legislature. To the same class may be referred the case of *Missouri, K. & T. Ry. Co.* v. *Texas & St. L. Ry. Co.*, 10 Fed. Rep. 497, involving a provision in the constitution of Texas that "every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad," although all that was decided in that case was that the defendant railway company could not, on its own motion, make the crossing without the consent of the defendant, or without resort to legal proceedings in which the conditions and limitations under which such right should be exercised should be judicially fixed and determined. *Groves* v. *Slaughter*, 15 Pet. 449, 499, cited by appellant, perhaps goes further than any other case in holding a constitutional provision not self-executing; but its weight as an authority is much weakened from the facts that it was not considered by a full bench, and was decided by a divided court, Justice Story being one of the dissenters. Moreover, it seems difficult to

reconcile the decision in that case with the rule that prohibitory constitutional provisions are self-executing to the extent that anything done in violation of them is void; or the further rule, which that court has always professed to follow, that it would adopt the construction given to the constitution and laws of a state, not conflicting with those of the Union, by the highest court of that state.

Of all the cases cited by appellant, the one most relied on is that of *French* v. *Teschemaker*, 24 Cal. 518. The constitution of California provided: "Sec. 32. Dues from corporations shall be secured by such individual liability of the corporators and other means *as may be prescribed by law.*" "Sec. 36. Each stockholder of a corporation or joint-stock association shall be individually and personally liable *for his proportion* of all its debts and liabilities." The court held that section thirty-six (36) was not self-executing. But the decision was mainly based upon two considerations. The first was that, while this section provided that each stockholder should be liable for his *proportion* of the corporate debts, yet it did not determine what that proportion should be, nor prescribe any rule by which it should be ascertained. The second was that section thirty-six (36) was to be read in connection with section thirty-two, (32,) which was evidently addressed to the legislature. No such considerations exist here, and hence we do not think that the case is in point. The language used in our constitution is positive and mandatory. There is nothing in it indicative of an intention that ancillary legislation should be had to carry it into effect; neither is there anything in the nature of the liability imposed, such as to render any such legislation necessary. It is in the form of a present, complete enactment, which, although elliptical in form, definitely fixes the nature and amount of the liability, and to whom the liability is incurred. As remarked in *Allen* v. *Walsh, supra,* "it declares the creation of a liability to the extent named in the cases referred to." It is true that a question might arise as to whether it is the person who holds the stock when a debt is contracted, or the one who holds it when the action is brought, or any one who held it at any time while the debt existed, that is liable. But this is a mere question of construction, which would exist if the same or similar language were used in a statute,

as has sometimes been the case. But questions of construction, whether of a constitution or a statute, are for the courts, and not for the legislature. In fact, all the criticisms of the appellant upon this article of the constitution refer merely to supposed obscurities in its meaning, or doubts as to its construction; and the logic of his argument is that it is for the legislature to construe it, and determine its true meaning. According to his view, it means anything or nothing, according as the legislature see fit to construe it. But the people meant something by this provision, and, when that meaning is judicially determined by legitimate rules of construction, it is as obligatory on the legislature as on any one else.

Much stress is laid upon the fact that this provision contains no remedy for enforcing the liability, as indicating that it was not intended to be self-executing. We fail to perceive any force whatever in this line of argument. The maxim, *ubi jus ibi remedium,* is as old as the law itself. As was said by Lord Holt: "If a man has a right, he must have a means to vindicate and maintain it, and a remedy, if he is injured in the exercise and enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy, for want of right and want of remedy are reciprocal." The maxim referred to gave occasion for the invention of that form of action called "an action on the case." The principle adopted by the courts accordingly was that the novelty of the particular complaint in an action on the case was no objection, provided an injury cognizable by law be shown to have been inflicted on the plaintiff. Every statute made against an injury, mischief, or grievance impliedly gives a remedy, for, if no remedy be expressly given, a party has his action upon the statute. For example, "if a penalty be given by statute, but no action for the recovery thereof be named, an action of debt for the penalty will lie." 2 Dwar. St. 677. So where a statute requires an act to be done for the benefit of another, or forbids the doing of an act which may be to his injury, though no action be given in express terms by the statute for the omission or commission, the general rule of law is that the party injured shall have an action; for, where a statute gives a right, there, although in express terms it has not given a remedy, the remedy which by law is properly applicable to that right follows

as an incident. *Ashby* v. *White*, 2 Ld. Raym. 938. Hence in the present case it was not necessary that the constitution should have expressly given a remedy by which a creditor of the corporation might enforce the liability of a stockholder. If it in fact created such a liability of the latter in favor of the former, there would not be the least trouble in framing a proper complaint in an action to enforce it. Of course, the remedy is always within the control of the legislature, and may be changed as they see fit, provided only it remains adequate. It is entirely competent for them to provide a new and statutory remedy, and make it exclusive, if they see fit. An inference in favor of appellant's contention is sought to be drawn from the history of this provision in the constitutional convention. In the form in which it is now found, this provision was the one adopted by the Democratic wing of the convention. The provision first adopted was that "*provision shall be made* making each stockholder individually liable to the amount of stock held or owned by him." Counsel say, and doubtless correctly, that this would not have been self-executing, as its language was directed to the legislature, and evidently contemplated legislation to carry it into effect. In this form it was adopted by the committee of the whole, and then referred to the committee on phraseology and *revision*, who reported it back in its present form, ("every stockholder shall be liable," etc.,) when it was adopted by the convention. To our minds, the material change which that committee made in the language indicates very strongly that the purpose of the change was to put the provision in the form of a self-executing enactment, and thus place it beyond the power of the legislature to defeat the object sought to be accomplished.

An argument is also sought to be drawn from subsequent legislative construction. We attach little or no importance to this. An argument either way might be made, for the legislation upon the subject of the individual liability of stockholders has been variable, and not uniformly consistent either with the theory that the constitution itself created such a liability or that it did not. Upon the theory that it did, it must be confessed that some of this legislation was superfluous, and its repeal unavailing. On the other hand, it may be said that, in passing Laws 1878, ch. 56, making stockholders

in manufacturing or mechanical corporations liable for corporate debts to the amount of stock held or owned by them, the legislature must have assumed that the constitution itself created such a liability in the case of other corporations, for it is not to be supposed that they would have singled out manufacturing corporations as the only ones where such a liability should exist. Moreover, the legislature in submitting, and the people in adopting, the amendment of 1872, excepting corporations organized for a manufacturing or mechanical business from the operation of article ten, (10,) section three, (3,) of the constitution, must have supposed that this section *ex propria vigore* created an individual liability on the part of stockholders, for otherwise the amendment was useless and unnecessary, unless it was to relieve the legislature from a sort of moral obligation to legislate on the subject.

3. The answer in this case alleges that in July, 1889, the defendant corporation was, upon petition of creditors under the insolvent law of 1881, adjudged insolvent, and a receiver of its property appointed by the court, who had fully administered the corporate assets, and distributed the proceeds among those creditors who executed releases to the corporation as required by statute; that plaintiff in January, 1890, executed and filed such a release, and accepted her dividend from the receiver. It is claimed, under the doctrine of *Mohr* v. *Minnesota Elevator Co.*, 40 Minn. 343, (41 N. W. Rep. 1074,) that this release of the corporation had the effect of also releasing the stockholders. The plaintiff, on the other hand, claims that the rule of that case was changed by Laws 1889, ch. 30, entitled " An act to amend an act entitled ' An act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debtors;' " section one (1) of the amendatory act providing "that the release of any debtor under this act shall not operate to discharge any other party liable as surety, guarantor, or *otherwise* for the same debt." The point is made that this amendatory act is invalid, because the subject is not sufficiently expressed in its title. There is nothing in this. It recites *verbatim* the title of the original act, which sufficiently expresses the subject of that act. It is true that

the title of the amendatory act does not refer to the chapter, or year when the original act was passed, but this is unimportant, especially as there was no other act of the same title. Similar titles have been invariably sustained in this and other jurisdictions having the same constitutional provision. The title of this act is not materially different from that sustained by this court in *City of Winona* v. *School-Dist.*, 40 Minn. 13, (41 N. W. Rep. 539.)

It is further claimed that the amendment is inapplicable, because its terms will not include the liability of stockholders for corporate debts; the argument being that, where words of specific import are followed by a general term, the general term is to be taken to apply only to persons or things *ejusdem generis* with the specific terms; that the words "or otherwise" must therefore be limited to those whose liability for the debt is of the same kind as that of surety or guarantor; and that the liability of a stockholder for the debts of a corporation is different from that of either a surety or a guarantor, and therefore not within the terms of the act. The act of 1889 was passed about two weeks after the decision of the *Mohr Case,* and the proviso referred to was doubtless enacted for the very purpose of changing the rule laid down in that case. That it had that effect was assumed in *Tripp* v. *Northwestern Nat. Bank,* 41 Minn. 400, (43 N. W. Rep. 60; decided August 12, 1889.) Even under the strict doctrine of *ejusdem generis,* we have no doubt that the term "or otherwise" would embrace those liable as stockholders for corporate debts; for, while that liability is *sui generis,* yet it is in many respects sufficiently analogous to that of surety or guarantor to fall within the same general class. But the doctrine of *ejusdem generis* is but a rule of construction to aid in ascertaining the meaning of the legislature, and does not warrant a court in confining the operation of a statute within narrower limits than intended by the lawmakers. The general object of an act sometimes requires that the final general term shall not be restricted in meaning by its more specific predecessors. Thus the expression, "any bond or other specialty," has been held to comprehend every kind of specialty, including a statute. The evident intention was that this amendment should embrace all cases where some one else was liable, in whatever capacity, for the same debt with

the insolvent debtor. The insolvency proceedings against the corporation were instituted and its discharge granted after the passage of the act of 1889, but the debt for which plaintiff sues was contracted prior to that date; and it is claimed that the act is, as to stockholders whose liability had been already incurred, unconstitutional, because impairing the obligation of contracts. We confess our inability to appreciate the force of this argument. The liability of a stockholder is fixed and measured by the constitution alone. The insolvent law neither increases nor affects that liability, but has reference solely to the remedy of the creditor against the insolvent debtor. An existing creditor would have as much right to object to the passage of a bankrupt act, or a debtor to its subsequent repeal, as would this appellant to object to the amendment of this insolvent law. Bankrupt laws, either by express provision or by construction, generally provide that the discharge of the bankrupt shall not release another person who is liable for the same debt. This has been held indiscriminately in cases where the debt was contracted before, as well as where it was contracted after, the passage of the bankrupt act, and it was never suggested that as to such other person the act was invalid, as impairing the obligation of his contract. The discharge of the insolvent or bankrupt in such cases, as we have repeatedly held, is not the voluntary act of the creditor, but purely by operation of law, which, like the act of God, hurts nobody.

Order affirmed.

(Opinion published 50 N. W. Rep. 1110.)