Argued on demurrer October 10, overruled October 17, 1914.

## STATE EX REL. v. HARRIS.*

(144 Pac. 109.)

**Quo Warranto—Demurrer—Admission.**

1. A demurrer to the petition or complaint in *quo warranto* admits the allegations that are properly pleaded to be true.

**Officers—Recall—Constitutional Provisions.**

2. Article II, Section 18, of the Constitution, authorizes the recall of officers and provides that there may be required 25 per cent, but

---

*As to self-executing constitutional provisions, generally, see note in 16 L. R. A. 281.

The question of the recall is treated in a note in 50 L. R. A. (N. S.) 227.　　　REPORTER.

no more, of the number of electors who voted in the district at the preceding election for justice of Supreme Court to file their petition demanding recall, and authorizes the legislative assembly or the people to make laws to aid the operation thereof. *Held,* that the section requires 25 per cent of the electors to sign any petition for recall until the legislative assembly or the people provide for a petition signed by a less number.

Constitutional Law—Construction of Constitutional Provisions—Self-executing Provisions—"Aid."

3.   In Article II, Section 18, of the Constitution, authorizing the recall of officers, the provision for such additional legislation as may aid the operation of the section does not hold the section in abeyance until such legislation is enacted, the word "aid" signifying to support, help or assist.

Constitutional Law—Construction of Constitutional Provisions—Self-executing Provisions.

4.   Article II, Section 18, of the Constitution, provides that every public officer is subject to recall, and requires a petition for recall to be presented to and filed with the officer with whom the petition for nomination is required to be filed, and further provides that it shall not be necessary for petitions to be signed by more than 25 per cent of the legal voters, requires the reason for the recall to be stated in the petition, and that the officer be given five days after its filing in which to resign, and that if he does not resign in five days after the petition is filed a special election shall be ordered by the officer with whom the petition is filed, and in case the officer resigns that the vacancy shall be filled as provided by law, and authorizes such additional legislation as may aid the operation of the section, including provision for payment by the public treasury of the reasonable special election campaign expenses of the officer, is self-operating, except as to the provision for legislation for the payment of the campaign expenses of the officer.

Constitutional Law—Construction of Constitutional Provisions—"Self-executing."

5.   Constitutional provisions are "self-executing" where it is the manifest intention that they should go into effect and no ancillary legislation is necessary to the enjoyment of a right given or the enforcement of a duty or liability imposed.

Constitutional Law—Rules of Construction—Intention.

6.   Article II, Section 18, of the Constitution, authorizing the recall of officers, should be construed to give effect to the intention of its framers and electors who adopted it, and they should be taken to have intended what the language used means.

Constitutional Law—Construction of Constitutional Provisions—Self-executing Provisions.

7.   Under Article II, Section 18, of the Constitution, authorizing the recall of public officers, the failure of the legislature to provide for payment of campaign expenses of the officers subjected to the recall out of the public treasury as authorized by the section does not suspend the right of recall.

Original proceeding in Supreme Court.

In Banc.    Statement by MR. JUSTICE RAMSEY.

This is an original proceeding, on the relation of Andrew L. Clark, for *quo warranto* to W. A. Harris. Heard on demurrer to the petition or complaint.

DEMURRER OVERRULED.

*Mr. Martin L. Pipes* and *Mr. Ansel R. Clark,* for defendant.

*Mr. Charles E. S. Wood* and *Mr. George F. Martin,* for plaintiff.

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action in the nature of *quo warranto* brought in this court by the State of Oregon, on the relation of Andrew L. Clark, against the defendant, W. A. Harris, wherein it is contended that the defendant is guilty of usurping and unlawfully exercising the office of county judge of Columbia County. It is contended, also, that the relator, Andrew L. Clark, is the duly elected and qualified county judge of said county and entitled to said office, etc. The petition or complaint states the facts relied upon by the plaintiff. The defendant filed a demurrer to the petition or complaint, alleging that said petition or complaint does not state facts sufficient to constitute a cause of action. This demurrer was argued *in banc,* some days ago by attorneys for the respective parties, and taken under advisement by the court.

It is not necessary to state the facts in full, as the argument covered substantially but one question, to wit, whether Article II, Section 18, of the Constitution,

relating to the recall of public officers, is self-executing. On and prior to September 22, 1914, the defendant was the duly elected, qualified and acting county judge of Columbia County. On August 28, 1914, there was filed in the office of county clerk of Columbia County a petition in proper form for the recall of the defendant, in accordance with the terms of Article II, Section 18, of the Constitution. This petition contained all that said Section 18 requires to be set forth in a petition for a recall. The defendant did not resign, and the county clerk duly ordered a special election to be held in said county on September 22, 1914, to determine whether the people of said county would recall the defendant as county judge of said county. Due notice of said election was given, and it was duly held. Andrew I. Clark, the relator, was nominated as a candidate for county judge, to be voted for at said election. At said recall election, he received, for the office of county judge, 1,484 votes, and the defendant received only 1,249 votes; the former having received a majority of 235 over the defendant, and no person except said relator and the defendant having received any votes at said election. The said vote was duly canvassed and said relator was duly declared to have been elected county judge of said county at said election. A certificate of election was issued to the relator, and he immediately qualified as county judge of said county by taking, subscribing and filing his oath of office as required by law. The relator was and is a male citizen of the United States and of the State of Oregon and of Columbia County, and duly qualified to be elected county judge of said county. After the relator had so qualified as county judge of said county, he duly demanded of the defendant the possession of the books, papers and insignia of said office; but the defendant

refused to accede to said demand and continues to hold said office, and excludes the relator therefrom, etc.

1. The demurrer admits the allegations of the petition or complaint that are properly pleaded to be true. The point contended for by the defendant upon the demurrer is that the recall of public officers provided for by Article II, Section 18, of the Constitution is not in force, because said provision of the fundamental law is not *self-executing,* and no act of the legislative assembly or of the people has been passed to carry it into effect. If this contention is well founded, the recall election was unauthorized and consequently void. The counsel for the defendant contend that this section is *in abeyance,* and that it will continue to be in that state until the legislative assembly or the people shall enact a law providing the per cent of the legal voters that shall be necessary to sign petitions for a recall, and also for the payment by the public treasury of the reasonable special election expenses of the officer whom the petitioners desire to have recalled.

Said Section 18 is as follows:

"Every public officer in Oregon is subject, as herein provided, to recall by the legal voters of the state or of the electoral district from which he is elected. There may be required 25 per cent, but not more, of the number of electors who voted in his district at the preceding election for justice of the Supreme Court to file their petition demanding his recall by the people. They shall set forth in said petition the reasons for said demand. If he shall offer his resignation, it shall be accepted and take effect on the day it is offered, and the vacancy shall be filled as may be provided by law. If he shall not resign within five days after the petition is filed, a special election shall be ordered to be held within twenty days in his said electoral district to determine whether the people will recall said officer. On

74 Or.—37

the sample ballot at said election shall be printed in not more than two hundred words, the reasons for demanding the recall of said officer as set forth in the recall petition, and in not more than two hundred words, the officer's justification of his course in office. He shall continue to perform the duties of his office until the result of said special election shall be officially declared. Other candidates for the office may be nominated to be voted for at said special election. The candidate who shall receive the highest number of votes shall be deemed elected for the remainder of the term, whether it be the person against whom the recall petition was filed, or another. The recall petition shall be filed with the officer with whom a petition for nomination to such office should be filed, and the same officer shall order the special election when it is required. No such petition shall be circulated against any officer until he has actually held his office six months, save and except that it may be filed against a senator or representative in the legislative assembly at any time after five days from the beginning of the first session after his election. After one such petition and special election, no further recall petition shall be filed against the same officer during the term for which he was elected unless such further petitioners shall first pay into the public treasury which has paid such special election expenses, the whole amount of its expenses for the preceding special election. Such additional legislation as may aid the operation of this section shall be provided by the legislative assembly, including provision for payment by the public treasury of the reasonable special election campaign expenses of such officer. But the words, 'the legislative assembly shall provide,' or any similar or equivalent words in this Constitution or any amendment thereto, shall not be construed to grant to the legislative assembly any exclusive power of law-making nor in any way to limit the initiative and referendum powers reserved by the people."

This section was adopted by a vote of the people on the first Monday in June, 1908. Three general sessions of the legislative assembly have passed since its adoption, but no act has been passed in relation thereto. This section is new, and it is now before this court for the first time for construction. The first sentence of said section of the Constitution is as follows:

"Every public officer in Oregon is subject, as herein provided, to a recall by the legal voters of the state or of the electoral district from which he is elected."

This provision subjects every state, district, county, and municipal officer to what has been designated as the "Imperial Recall." It provides a special remedy to oust from public office a corrupt, incompetent, unfaithful, or unpopular public servant.

2. The first point made is that said section does not provide definitely what per cent of the electors shall be required on petitions for a recall, and that this is left to be determined by county clerks or other proper officers with whom the petitions are required to be filed. But we cannot assent to this contention. The clause of this section relating to this matter is as follows:

"There may be required 25 per cent, but not more, of the number of electors who voted in his district at the preceding election for justice of the Supreme Court to file their petition demanding his recall by the people."

This section authorizes the legislative assembly or the people to enact laws to "aid" the operation thereof, and it is competent for the legislative assembly or the people to provide by law that it shall be sufficient for a recall petition to be signed by 10 or 15 per cent of the electors, or any per cent thereof less than 25; but not more than 25 per cent can be required. Until the legislative assembly or the people enact the contrary,

every petition for a recall must be signed by not less than 25 per cent of the electors of the county or election district.

3. The second point contended for by the counsel for the defendant is that the following provision of said Section 18 evinces an intention that said section shall *remain in abeyance* until certain legislation referred to therein shall be enacted:

"Such additional legislation *as may aid the operation of this section* shall be provided by the legislative assembly, including provision for payment, by the public treasury of the reasonable special election campaign expenses of such officer."

This clause requires the legislative assembly to pass such legislation "as may *aid* the operation" of said section. This does not mean legislation to put said section in operation, but such as will *aid* its operation. It seems to imply that the section will be in operation before such legislation shall be enacted. "To aid" signifies "to support, help, or assist."

4. This section does not confer *power* upon the legislative assembly to provide for the recalling of officers. It is not a mere declaration of principles to be made operative by the legislative assembly. It provides that "*every public officer, is subject as herein provided, to recall.*" Every officer is made, by this section, subject to recall as provided therein and not as the lawmaking department may provide. This provision speaks in the present tense, and declares that every public officer *is* subject to recall as provided in said section. It requires a petition demanding a recall to be presented to and filed with the officer with whom a petition of nomination to such office is required to be filed; it provides that it shall not be necessary that such petitions be signed by more than 25 per cent of

the legal voters that voted for justice of the Supreme Court at the preceding election; it requires the reasons for the recall to be stated in the petition; it requires also that the officer be given five days after the petition is filed in which to resign; it provides that if he does not resign in five days after the petition is filed, a special election shall be ordered to be held in 20 days to determine whether the people will recall him; it requires the election to be called by the officer with whom the petition is filed; it provides that if the officer resigns, his resignation shall be accepted, and that the vacancy shall be filled as provided by law; it provides that on the sample ballots for said election shall be printed, in not more than 200 words, the reasons for demanding the recall of the officer, and it also provides that there shall be printed on said ballot, in not more than 200 words, the officer's defense; it provides, also, that other candidates may be nominated to be voted for at said election for said office, and declares that the person receiving the highest number of votes for said office shall be deemed to be elected for the remainder of the term, whether it be the officer who is subjected to the recall or another, etc.

This section sets forth a complete *modus operandi* for the recall. Nothing whatever is omitted that is necessary to effect the recall. Its provisions are absolute, not conditional. Its terms indicate an intention that it shall be operative as soon as it shall be adopted by the people. *There is nothing to be done by the legislature to put it in operation.* It is clear from the terms of this section that its framers and the electors who adopted it did not intend that it should be *in abeyance* until the law-making power should pass some act in its aid. If they had intended to confer *power* on the legislature to provide for a recall of public officers,

they could have done so in a few words, and it would not have been necessary to use 500 words in conferring this power. It is evident from the wording of this section that its framers and the electors who adopted it desired to make it effective immediately. To make it dependent on the action of the legislature would have been to make it subject to be defeated by the inaction of an unfriendly or negligent legislature.

5. Constitutional provisions are self-executing where it is the manifest intention that they should go into immediate effect and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty or a liability imposed: 6 Am. & Eng. Cyc. of Law (2 ed.), 912; 8 Cyc., pp. 752, 753; Cooley, Constitutional Lim. (7 ed.), 121; *Acme Dairy Co.* v. *Astoria,* 49 Or. 523 (90 Pac. 153); *Tuttle* v. *National Bank of Republic,* 161 Ill. 502 (44 N. E. 984, 34 L. R. A. 750); *Friedman* v. *Mathes,* 8 Heisk. (Tenn.) 498; *Willis* v. *Mabon,* 48 Minn. 150 (50 N. W. 1110, 31 Am. St. Rep. 626, 16 L. R. A. 281).

8 Cyc., pp. 752, 753, says:

"A self-executing provision is one which supplies the rule or means by which the right given may be enforced or practiced, or by which a duty enjoined may be performed."

Justice MOORE, in *Acme Dairy Co.* v. *Astoria,* 49 Or. 523 (90 Pac. 153), says:

"A section of the fundamental law is self-executing when it prescribes a rule, the application of which puts into operation the constitutional provision. * * The amendment quoted, having expressly authorized cities and towns to provide for the manner of exercising the initiative and referendum powers as to their municipal legislation, the provision is therefore self-executing in respect to the class of enactments specified."

In *Willis* v. *Mabon,* 48 Minn. 150 (50 N. W. 1110, 31 Am. St. Rep. 626, 16 L. R. A. 281), the Supreme Court of Minnesota says:

"The question in every case is whether the language of a constitutional provision is addressed to the courts or to the legislature—does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect?"

In *Tuttle* v. *National Bank of Republic,* 161 Ill. 502, (44 N. E. 984, 34 L. R. A. 750), the Supreme Court of Illinois, says:

"Where it is apparent that a particular provision of the organic law shall go into immediate effect without ancillary legislation, and this can be determined by giving full force and effect to all its clauses relating to the same subject, and the language is free from ambiguity, then it becomes the imperative duty of the judicial tribunals to declare it self-executing; and where the provision is unambiguous and the purpose of the provision would be frustrated unless it be given immediate effect, it will be held self-executing."

Cooley, Constitutional Limitations (7 ed.), 121, says:

"A constitutional provision may be said to be self-executing, if it supplies a sufficient rule, by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced, and it is not self-executing when it merely indicates *principles,* without laying down rules by means of which those principles may be given the force of law."

The clause of the section of the Constitution under consideration which provides that such additional legislation as may aid in the operation of this section shall be provided by the legislative assembly, including a provision for payment, by the public treasury, of the reasonable special election campaign expenses of such an officer, is a direction to the legislature to

pass such act as may aid in the operation of said section, but the right to have an officer recalled, in accordance with the provisions of such sections, is not made *dependent* on the passage of such an act. It is the duty of the legislative assembly to pass such an act, but the right to recall an officer cannot be suspended or defeated by the failure of the legislature to do its duty in the premises. There is nothing in said section indicating an intention that the right of recall should be *dependent* upon the action or will of the legislature. The people adopted this section to enable them to have a remedy against corrupt, inefficient, unfaithful or unpopular public officers. The section provides a complete code for a recall of officers, and, according to the obvious meaning of the language used, the right was to be effective *as soon as said section took effect.*

6. This section should be so construed as to give effect to the intention of its framers, and the electors who adopted it, and they should be taken to have intended what the language used means.

Chief Justice MARSHALL, in *Gibbons* v. *Ogden,* 9 Wheat. 1 (6 L. Ed. 23), says:

"The framers of the Constitution, and the people who adopted it, must be understood to have employed words in their natural sense, and to have intended what they have said."

Justice LAMAR, in *Lake County* v. *Rollins,* 130 U. S. 670, 671 (32 L. Ed. 1060, 9 Sup. Ct. Rep. 652), says:

"The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument. * * The sim-

plest and most obvious interpretation of a Constitution, if in itself sensible, is the most likely to be that meant by the people in its adoption.''

Bearing in mind that this section provides a complete method of procedure for effecting a recall, and that its language indicates an intention that it should be operative immediately, we hold that it is self-executing as to all its provisions, except the clause that requires the legislature to pass an act providing for the payment of the reasonable special election campaign expenses of the officer subjected to the recall. As to the latter provision, it is not self-executing, but the failure of the legislature to pass such an act does not prevent the enforcement of the provisions for the recall.

7. To hold that the failure of the law-making department to enact a law requiring the payment of the reasonable campaign expenses of the officer subjected to the recall out of the public treasury operates as a suspension of the right to recall a public officer would, in our judgment, defeat the intention of the electors who adopted said Section 18. We believe that their intention was that the right to recall a public officer should exist as soon as said constitutional provision took effect.

It is hardly necessary for us to say that we have nothing to do with the *wisdom* of the provision for the recall. Obviously, it can be abused.

We hold that said Article II, Section 18, of the Constitution is self-executing. We hold, also, that the form of notice of the recall election is sufficient.

The demurrer to the petition or complaint is overruled.       Demurrer Overruled.

Mr. Justice Moore and Mr. Justice Eakin took no part in the consideration of this case,