THE STATE OF NEBRASKA, EX REL. THE CITY OF LINCOLN, v. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

1. **Municipal Corporations:** AID TO INTERNAL IMPROVE- MENTS. A city has authority under the statute to donate to one or more railroads or other works of internal improvement its bonds not to exceed in the aggregate ten per cent of the assessed valuation; and bonds issued for water-works owned by the city or other city purposes are not to be computed in making up the aggregate which the city may donate.

2. ———: ———: STATUTORY AUTHORITY. The authority for a city to issue bonds to aid in the construction of railroads or other works of internal improvements is expressly conferred by sec. 1, chapter 45, Compiled Statutes.

3. ———: ———: ———. The word " aid " as used in the statute may include donations.

4. ———: ———: DUTY OF AUDITOR AND SECRETARY OF STATE. The provision in the constitution requiring the secretary and auditor of state to endorse on bonds issued as a donation to a railroad or other work of internal improvement, that such bonds were " issued pursuant to law," requires no legislation to carry it into effect, but it is the duty of such officers in a proper case to make such endorsement.

5. ———: ———: ———. The provision applies to all bonds issued for that purpose, and not alone to the five per cent in excess of the ten per cent first issued.

6. ——: ——: MANDAMUS.    Sec. 31, chapter 9, Compiled
 Statutes, authorizes a city in a proper case to institute a proceed-
 ing to compel the certification of bonds issued by such city.

ORIGINAL application for mandamus.

*Allen W. Field* (*James M. Woolworth* and *J. R. Webster*
with him), for relator.

*William Leese, Attorney General* (*Mason & Whedon* with
him), for respondent.

MAXWELL, CH. J.

This is an application for a mandamus against the sec-
retary of state and auditor to compel them to register "and
under their seal of office certify upon" bonds to the amount
of $50,000 issued as a donation to the Missouri Pacific
Railway, "that they have been regularly and legally is-
sued," etc.    The relator alleges in its petition that,

"3d.    Prior to the 10th day of October, 1885, in due
conformity to law, the relator, the city of Lincoln, had is-
sued its bonds in aid of the construction of works of inter-
nal improvement, as follows:

In 1872, to the Atchison & Nebraska Railroad
    Company...........................................$ 9,500
In 1880, to the Lincoln & Northwestern Railroad
    Company...........................................$25,000
Which were issued by said city in aid of works of
    internal improvement, and amount to.............$34,500

"4th.    On the 10th day of October, 1885, the assessed
valuation of all taxable property in the city of Lincoln
amounted to the sum of $2,183,030; as the same was as-
sessed and returned at the time of the assessments in April
and May of the year 1884 for revenue purposes.

"5th.    On the 7th day of September, A.D. 1885, the
mayor and council of said city of Lincoln duly passed an
ordinance calling a special election in said city of Lin-

coln, to be held on the 10th day of October, 1885, for the purpose of taking the vote of the electors of said city upon a proposition to them submitted, to issue and donate to the. Missouri Pacific Railway Company the bonds of said city of Lincoln to the amount $50,000, dated November 1st, 1885, payable twenty years thereafter, with interest from the 1st day of January, 1886, at the rate of five per cent per annum, payable semi-annually, interest and principal payable at the bank of Kountz Brothers in the city of New York, to aid said Missouri Pacific Railroad Company in the construction of its road from its main line in Cass county to said city of Lincoln.

"6th.   Said proposition was conditioned that said railway company should construct a first-class railroad of standard guage into said city of Lincoln, connected with the main line of said company already constructed, so that continuous trains might be run thereon from its main line into said city; that said company should begin active construction of said road within thirty days from the date of election and declaration of the adoption of the proposition, and complete said railroad, with a necessary depot for freight and passengers at said city, and other appurtenances; and run regular trains thereon from its already constructed line in this state into said city of Lincoln by the first day of September, 1886.

"7th.   By said proposition it was also provided that thirty days after the active work of constructing said railroad should have begun, said bonds should be executed and deposited in the hands of a trustee, to be appointed by the mayor of said city, to hold in trust for said company and for said city, to be delivered to said company if it should comply with the conditions aforesaid, otherwise to be re_ turned to said city to be canceled.

"8th.   Said ordinance was duly approved and was published as required by law for four weeks continuously in the Nebraska *State Journal,* a weekly newspaper published

in said city, commencing the 10th day of September, 1885; and such election was duly and regularly held the 10th day of October, 1885, and on the 12th day of October, 1885, the returns of said election were by the mayor and council of said city of Lincoln duly canvassed, and the vote of the electors cast found and declared to be, in favor of said proposition, 1799 votes; against said proposition, 56 votes; and more than two-thirds of the votes cast being in favor of said proposition. The result was thereupon, by the mayor and council of said city, declared to be that said proposition was adopted, and the proposition and result was entered upon the records of said city of Lincoln, and notice of its adoption was published in said weekly newspaper, the Nebraska *State Journal*, as required by law, for two weeks continuously prior to the issue of said bonds.

" 9th. The Missouri Pacific Railway Company on its part accepted the result so declared, and entered upon the active construction of its railway on or about the 8th day of November, A.D. 1885, and within less than thirty days after said election, and has completed and laid about two miles of its road ready for the passage of rolling stock, engines, and cars, and has acquired by purchase a large amount of real estate in fee simple for depot grounds, for which real estate so purchased it has paid out the sum of eighty thousand dollars, and is now engaged in acquiring, partly by purchase and partly by condemnation, grounds for depots, side tracks, yard, and appurtenant uses, tracts of grounds aggregating fifty-one acres in and adjacent to said city, having to this time fully complied with all the terms and conditions of said proposition on its part to be performed.

"10th. Pursuant to said proposition and the facts aforesaid, thirty days after actual work of construction of said railroad had been commenced, by order of the mayor and council of said city, the mayor and clerk of said city proceeded to sign and execute said bonds, and the mayor of said city named and designated the First National Bank,

of Lincoln, Nebraska, as trustee to receive and hold the same under the terms of said ordinance and proposition so adopted by the electors, and thereupon, before delivering said bonds to said trustee, the relator applied to the respondents, H. A. Babcock, auditor of public accounts, and Edward P. Roggen, secretary of the state of Nebraska, under the provisions of "An act to provide for the registration by the auditor of public accounts of bonds issued by villages and cities of the second class," approved March 5th, 1885, for the registration of said bonds, and requested that they certify upon said bonds that they have been regularly issued and registered in the office of the auditor of public accounts, and furnished to said auditor a transcript of all the proceedings had previous to the issuance of said bonds relative thereto, duly certified under the hand of R. C. Manley, city clerk of said city, authenticated by the seal of said city, and offered to pay said auditor the legal fees therefor, but the registration of said bonds was by the respondents refused.

"11th.    Relator further shows that, so far as it is advised, the reason wherefor said respondents refuse to register said bonds, as they claim, that the said issue is excessive in amount and is in excess of the power of said city to issue bonds, because, as respondents claim, the city of Lincoln has no power to issue bonds for aid of works of internal improvement exceeding, together with outstanding bonds for whatsoever purposes issued, the amount of ten per centum of the assessed valuation of said city, and that the outstanding obligations of said city, together with the proposed 50,000 (thousand) dollars of bonds, exceed the sum of $218,303.

"13th.    But relator shows all its outstanding bond obligations of every character unpaid the 10th day of October, 1885, or November 1st, 1885, together with the year and the purpose of their issue, were and are as follows:

| | | |
|---|---|---|
| For aid of works of internal improvement above stated..................... | | $ 34,500 |
| For protection from fire (fire apparatus, etc.), charter of 1871 in 1872......$ | 20,000 | |
| To fund floating debt deficit of general revenue charter of 1871 in 1872 | 30,000 | |
| To fund floating debt deficit of general revenue charter of 1871 in 1875 | 53,000 | |
| For construction of water-works and water supply charter of 1883 in 1882 and 1884, the water-works being property of said city......... | 110,000 | |
| | | $213,000 |
| Total indebtedness...................... | | $247,500 |

"And relator contends that such indebtedness of $213,000 is not chargeable under the law and statute in such case provided against the power of said city to issue bonds in aid of works of internal improvement, which question, so far as relator is advised, is the sole question involved in this controversy.

" Wherefore the relator prays the court the issue of a peremptory writ of mandamus, directed to H. A. Babcock, auditor of public accounts, and Edward P. Roggen, secretary of state of the state of Nebraska, commanding them that they forthwith register and, under the seal of their office, certify upon said bonds that they have been regularly and legally issued, and that they have been registered in the office of the auditor of public accounts, in accordance with the provisions of law."

The defendants filed an answer to the petition, and there is also a stipulation in the record as to certain facts.

As we understand the position of the defendants, they are ready and willing to certify the bonds in question if it is clear that it is their duty so to do; but they are in doubt, because of the various and apparently conflicting provisions

of statute relating to the subject, as to their duty in the premises, and ask the direction of the court.

The first question presented is the amount of bonds or other evidences of indebtedness which a city may issue as the aggregate of donations to a railroad or railroads, or other works of internal improvement.

Sec. 2, art. 12 of the constitution was copied in the opinion in *State v. Babcock,* heretofore filed, and need not be set out at length here.    It will be observed that the restriction is upon *donations*—that is, that a city or county cannot, in the first instance, make a donation or donations for the purpose indicated which, in the aggregate, shall exceed ten per cent of the assessed valuation, with the further limitation that the legislature might authorize a municipality, by a two-thirds vote, to increase its donations five per cent.    Bonds issued by a city for water-works which are owned by such city are in no sense donations, and are not to be included in the aggregate of evidences of indebtedness donated or to be·donated to railroads or other works of internal improvements, and the same rule applies to* other bonds issued for city purposes.

Some objection is made as to the right of a city to issue its bonds or other evidences of indebtedness because of the limitation upon a *county* that its donations "with the donations of such subdivisions in the aggregate shall not exceed ten per cent of the assessed valuation of such county."

The question as to the effect of this limitation upon county donations is not before the court, and will not be considered; but it is clear that it does not apply to a city, it being expressly excepted under the second proviso; that is, a city, in a proper case, may issue *its* bonds to the amount of ten per cent to aid in the construction of works of internal improvement; nor does the limitation apply to a precinct.    *State v. Lancaster County,* 6 Neb., 214.    *Jones v. Hurlburt,* 13 Id., 131.    As the bonds heretofore issued, with those now sought to be certified, will not amount to

ten per cent, they do not prevent the city from making the donation in question.

2d. That Lincoln, being a city of the second class and having more than five thousand inhabitants, it has no authority, under the act creating it, to issue these or any other bonds of like character. Without making a critical examination of the act referred to, we find the authority expressly conferred by section one, chap. 45, Comp. St., which is as follows: "That *any* county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad or other work of internal improvement to an amount to be determined by the county commissioners of such county, or the city council of such city, not exceeding ten per centum of the assessed valuation of all taxable property in said county or city; *Provided,* The county commissioners, or city council, shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, in the manner provided by chapter nine of the Revised Statutes of the state of Nebraska, for submitting to the people of a county the question of borrowing money." This act was passed in 1869. It was not passed as a special act applicable alone to the counties or cities then in existence, but is general in its application, and confers authority upon any city or county to submit to the electors of the county or city the question of issuing bonds in a specified amount to aid in the construction of any railroad or other work of internal improvement. If, therefore, as contended, the charter of the city of Lincoln does not confer authority to donate the bonds of the city still such authority is granted by the general law, and the maxim *expressio unius est exclusio alterius* does not apply.

Objection is made that the power to vote bonds is to *aid* in the construction of railroads or other works of internal improvement. This question was very fully considered in *U. P. R. R. v. Commissioners of Colfax Co.,* 4 Neb., 450. The evident object of the statute was to enable a county

or city to avail itself of some proffered benefit of the character named in the statute by aiding or assisting the enterprise.    From the nature of the case no narrow technical construction can or should be placed upon the word.

In *U. P. R. R. v. Commissioners, supra,* it was contended with great force that it was to be restricted to donations alone; but this court refused to give it such a narrow construction, but held that the statute applied where the funds were to be expended in a work of internal improvement constructed by the county.    It may include donations and also works of internal improvement constructed by the municipality in part from bonds voted to aid the enterprise. This was the evident intention of the legislature, and the statute should be so construed as to carry such intent into effect.

Objections are made to the form of submission of the question, and also to the designation of a bank as trustee, but as no particular defect or want of authority is pointed out, they need not be considered.

3d.    One of the objections urged with great force in the argument of the case was, that the provision of section 2, art. 12 of the constitution, which declares that "no bonds or other evidences of indebtedness so issued shall be valid unless the same shall have endorsed thereon a certificate signed by the secretary and auditor of state, showing that the same is issued pursuant to law," was not self-operating, but required legislation to carry it into effect, and it was claimed that there being no such legislation the provision remained in abeyance.

No question arises at this time as to the purpose and effect of this provision, but merely as to the necessity for such certificate.    Judge Cooley, in his work on Constitutional Limitations, quotes the following with approval: "This, then, is the office of a written constitution; to delegate to various public functionaries such of the powers of government as the people do not intend to exercise for themselves; to classify these powers according to their na-

ture, and to commit them to separate agents; to provide for the choice of these agents of the people; to ascertain, limit, and define the extent of the authority thus delegated; and to reserve to the people their sovereignty over all things not expressly committed to their representatives."—E. P. Hurbut, in Human Rights and Their Political Guarantees.

Webster, in his speech on the Independence of the Judiciary, vol. 3, page 26, says: "It cannot be denied that one great object of written constitutions is to keep the departments of government as distinct as possible; and for this purpose to impose restraints designed to have that effect."

It is conceded in this case that if the constitution directed the officers named to certify the obligations in question that no legislation would be required to make it their duty to certify the same. But we find similar language used in other provisions has been construed as having taken effect without legislation. Thus section 24 of the bill of rights provides that "the right to be heard in all civil cases in the court of last resort, by appeal, error, or otherwise, shall not be denied," yet the effect has been to repeal so much of that portion of section 583 of the code as relates to the allowance of a petition in error. So the addition of the words "or damaged" to section 13 of the bill of rights of the constitution of 1867, which as amended forms section 21 of the bill of rights of our present constitution, and the same in regard to many other provisions which on an examination of the constitution will readily be perceived. This rule seems to be fairly deducible from the authorities: that if the constitutional provision either directly or by implication imposes a duty upon an officer or officers no legislation is necessary to require the performance of such duty. This principle has been recognized to its full extent in this state, where for a long time after our present constitution took effect officers, where there were no statutory provisions upon the subject, performed their duties directly under the authority of the constitution, and in no case in this court has such action been questioned.

We are referred to *Reineman v. C., C. & B. H. R. R. Co.*, 7 Neb., 310, but in that case it was decided that the constitution merely *limits* the power of the legislature to fifteen per cent. It is not a grant of power to vote bonds to the extent of fifteen per cent. Had it been, a different question would have been presented, as we have no statute authorizing the issuing of this class of bonds in excess of ten per cent.

In the case at bar there is a plain requirement that all "bonds or evidences of indebtedness so issued * * shall have endorsed thereon a certificate signed by the secretary and auditor of state, showing that the same is issued pursuant to law," and the result of the want of certification is declared in the same connection. The certifying of this class of bonds has been continued without objection under this provision of the constitution from the time it took effect till now, and has been recognized by this court as valid and necessary in at least one case. *State v. Alexander*, 14 Neb., 280. There is no doubt that hundreds of thousands, if not millions of dollars of this class of bonds have been thus certified, the value of which would be now affected by an adverse ruling.

4th. But it is sought to limit the bonds to be certified to the additional five per cent in excess of the ten per cent. It may be conceded that the punctuation as it appears in the original article on file in the secretary's office would admit of this interpretation. But a careful examination of the entire section convinces us that such restriction was not intended. The words, "*no* bonds or evidences of indebtedness *so issued*," evidently include all bonds or evidences of indebtedness issued by the municipality for the purpose named. The sense would not be materially different if the provision was that all bonds or evidences of indebtedness issued for railroads or other works of internal improvements should be certified in the manner provided.

Some objection is made to the city as relator, but section

31, chapter 9 of the Comp. Stat., seems to authorize the proceeding.

Upon the whole case it is apparent that the plaintiff is entitled to the writ, and it will be issued as prayed

WRIT AWARDED.

THE other judges concur.