**JOSEPH TRINER CORPORATION v.
MAHONEY, State Liquor Control
Com'r, et al.**

**FRANK McCORMICK, Inc. v. SAME.**

Nos. 2836, 2839.

District Court, D. Minnesota,
Fourth Division.

Oct. 23, 1937.

Bradford, Cummins & Cummins, of St. Paul, Minn., for plaintiff Joseph Triner Corporation.

Thomas Gallagher, of Minneapolis, Minn., for plaintiff Frank McCormick, Inc.

G. H. Braddock, of Minneapolis, Minn., amicus curiæ.

William S. Ervin, Atty. Gen., and Roy C. Frank, Asst. Atty. Gen., for defendants.

Before SANBORN, Circuit Judge, and NORDBYE and JOYCE, District Judges.

PER CURIAM.

These are the same suits in which this court granted preliminary injunctions on June 29, 1935. Triner Corp. v. Arundel, 11 F.Supp. 145. The fact situation remains unchanged except for the substitution of the present defendants for their predecessors in office. The facts are sufficiently stated in our opinion granting the preliminary injunctions and will not be repeated. The plaintiffs are wholesalers and licensed to sell liquor in the state of Minnesota.

Chapter 390 of the Laws of Minnesota 1935 provides: "No licensed manufacturer or wholesaler shall import any brand or brands of intoxicating liquors containing more than 25 per cent of alcohol by volume ready for sale without further processing unless such brand or brands shall be duly registered in the patent office of the United States."

The ground upon which we granted the preliminary injunctions in these cases was that the classifying of brands of imported liquor on the basis of their registration in the Patent Office of the United States and the forbidding of the sale of imported brands not registered in the Patent Office had no reasonable relation to the regulation of the liquor traffic within the state of Minnesota, and that the classification adopted by the Legislature of Minnesota was purely arbitrary and unreasonable and therefore violated the equal protection clause of the Federal Constitution, Amendment 14, § 1.[1]

Our attention has now been directed to the decision of the District Court of the Southern District of California in Young's Market Co. et al. v. State Board of Equalization of California et al., 12 F.Supp. 140, in which case an injunction was granted by that court against the enforcement of a law of California which imposed an annual license tax on wholesalers selling beer imported from other states into California, upon the ground that the statute violated both the commerce clause and the equal protection clause of the Federal Constitution because wholesalers selling beer made in California were not required to pay this license tax and therefore the wholesalers of imported beer were unreasonably discriminated against. The Supreme Court of the United States reversed the District

[1] An interesting discussion of these cases and the questions involved will be found in Cornell Quarterly, vol. XXI, No. 3, p. 504.

Court in State Board v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38. The District Court in granting the injunction against the enforcement of the California statute there challenged had relied to some extent upon our decision granting preliminary injunctions in these cases. Unless the situation with which we are confronted is distinguishable from that passed upon by the District Court of the Southern District of California and by the Supreme Court, we should reverse our holding and deny permanent injunctions.

A careful comparison of the cases therefore becomes necessary. In the cases before us, the plaintiffs—like the plaintiffs in the California case—are wholesalers licensed to do business in the state. The Minnesota statute prohibits the importation of liquors of a certain alcoholic content which are ready for sale without further processing, unless the brands of such liquors are registered in the Patent Office of the United States. In the California case the law prohibited a licensed wholesaler from dealing in beer imported from without the state unless he paid, in addition to his wholesaler's license fee, the importer's license fee or tax required of a wholesaler who sold beer imported into California. The discrimination complained of in the California case was that which arose between wholesalers who sold domestic beer and those who sold imported beer. Those who sold domestic beer were not required to pay the importer's license fee, while those who sold imported beer were required to pay it. The Minnesota statute discriminates between wholesalers who handle imported brands of liquor which are not registered in the Patent Office and those who handle imported brands of liquor which are registered in the Patent Office. It discriminates between those who import liquor requiring further processing in Minnesota and those importing liquor which does not require further processing in Minnesota. Imported liquor requiring further processing in the state may be sold in the state whether the brand is registered or not, whereas the same kind and quality of liquor, if it is imported into the state ready for sale, cån only be sold provided the brand is registered. Those who sell only liquor manufactured in Minnesota are not affected by the law, while those who import liquor of equal goodness may not sell it in the state unless it bears a registered brand.

It seems to us that there is a vast distinction between levying a uniform license tax upon wholesalers dealing in imported liquor, and prohibiting a licensed wholesaler from dealing in imported liquor ready for sale, merely because the brand or trade-name by which the liquor is known is not registered in the Patent Office. Licensing and imposing license fees and taxes is an ancient and well-recognized method of regulating businesses of all kinds, but, so far as we are aware, no other attempt has ever been made by a state to regulate and control the importation of intoxicating liquor because of the registration or nonregistration in the Patent Office of the trade-name which is applied to it. If we were convinced that the statute here in question had any reasonable relation to the regulation or control of the liquor traffic within the state of Minnesota, we would unhesitatingly dismiss these suits. If there in fact exists a reasonable basis for permitting the importation of liquor bearing a registered brand and for prohibiting the importation of the same kind and quality of liquor bearing an unregistered brand or a brand which is not subject to registration, we are unable to visualize it. We can see a relation between the United States Pure Food and Drug Act (as amended, 21 U.S.C.A. § 1 et seq.) and the kind of liquor which is offered to the public for consumption, but we can see no relation between the laws of the United States which permit the registration of certain trade-names in the Patent Office and the kind and quality of liquor which is offered to the public.

We have read with great care the decision of the Supreme Court of the United States in the California case referred to. That court held that under the Twenty-First Amendment a state may exact a license fee for the privilege of importing beer from other states; that the Twenty-First Amendment abrogated the right to import free so far as intoxicating liquors were concerned; and that the imposition of the importer's license fee by the state of California was not in violation of the commerce clause of the Federal Constitution. The contention that the California statute violated the equal protection clause, the Supreme Court disposed of in the following language (299 U.S. 59, at page 64, 57 S.Ct. 77, 79, 81 L.Ed. 38): "Second. The claim that the statutory provisions and the regulations are void under the

equal protection clause may be briefly disposed of. A classification recognized by the Twenty-First Amendment cannot be deemed forbidden by the Fourteenth. Moreover, the classification in taxation made by California rests on conditions requiring difference in treatment. Beer sold within the state comes from two sources. The brewer of the domestic article may be required to pay a license fee for the privilege of manufacturing it; and under the California statute is obliged to pay $750 a year. Compare Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883. The brewer of the foreign article cannot be so taxed; only the importer can be reached. He is subjected to a license-fee of $500. Compare Kidd v. Alabama, 188 U.S. 730, 732, 23 S.Ct. 401, 47 L.Ed. 669."

In discussing the claim that the statute violated the commerce clause, the Supreme Court made this statement (299 U.S. 59, at page 62, 57 S.Ct. 77, 78, 81 L.Ed. 38): "The amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state 'in violation of the laws thereof,' abrogated the right to import free, so far as concerns intoxicating liquors. The words used are apt to confer upon the state the power to forbid all importations which do not comply with the conditions which it prescribes."

If that language be construed to mean that a state may impose any conditions with respect to importations of intoxicating liquors, whether arbitrary and unreasonable or not, it sustains the contention which the defendants here make that, regardless of whether the statute of Minnesota has a reasonable or an unreasonable relation to the subject-matter, it must, nevertheless, be sustained. It is to be noted, however, that the Supreme Court expressly found it unnecessary to declare that the Twenty-First Amendment, with respect to liquor, had freed the States from all restrictions upon their police power which are to be found in the Constitution of the United States. It seems fair to assume, under the circumstances, that the Supreme Court was by no means convinced that the Twenty-First Amendment left the States free from the restrictions of the equal protection clause in dealing with intoxicating liquor.

We are not convinced that our conclusion that the Minnesota statute here assailed was invalid as violating the equal protection clause of the Constitution was wrong; and, in the absence of a decision of the Supreme Court of the United States holding that a state may, by virtue of the Twenty-First Amendment, impose arbitrary and unreasonable restrictions upon some importers of intoxicating liquor which are not imposed upon others similarly situated, and which restrictions would otherwise be violative of the Fourteenth Amendment, we think this court ought not so to declare.

The injunctions heretofore granted will be made permanent; and the plaintiffs may present findings of fact and conclusions of law conforming to the equity rules, and appropriate decrees.