## DUNN v. UNITED STATES.
### No. 1557.

Circuit Court of Appeals, Tenth Circuit.
June 24, 1938.

Douglas Garrett, of Muskogee, Okl., for appellant.

Charles N. Champion, Asst. U. S. Atty., of Muskogee, Okl. (Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before LEWIS, PHILLIPS, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Dunn was tried, convicted and sentenced on an indictment which charged him with having transported intoxicating liquor, to wit, whisky, from the state of Arkansas into the state of Oklahoma, in violation of

the Liquor Enforcement Act of 1936 (27 U. S.C.A. § 223(a).[1]

The cause had been submitted and was ripe for decision here when the United States Attorney at the direction of the Attorney General filed a brief raising the question of the applicability of Section 223 (a) to importation or transportation of intoxicating liquor into the state of Oklahoma and requested our decision thereon. We permitted the Attorney General of Oklahoma to file a brief as amicus curiae and the cause has been resubmitted.

■ At the close of the government's evidence Dunn filed a motion to quash the indictment and a motion to suppress the evidence of the arresting officers on the ground that the evidence adduced was obtained by means of an unlawful search of his automobile in violation of the Fourth Amendment. U.S.C.A. Const. Amend. 4.

The trial court overruled the motions.

The search complained of was made on December 21, 1936. All of the facts on which the motions were predicated became known to Dunn at that time. He was indicted on February 19, 1937, and tried on April 5, 1937. Such objections must be seasonably made. Except where there has been no opportunity to present them in advance of trial, a court when engaged in trying a criminal case will not stop to inquire into the legality of a search by which otherwise competent evidence has been obtained. The court will not thus halt the orderly progress of the trial to inquire into a collateral matter.[2]

The motions not having been seasonably made were properly overruled.

Oklahoma does not prohibit the importation of grain alcohol for medicinal, scientific and mechanical purposes, or intoxicating wine for sacramental purposes,[3] and does not provide for a permit or licensing system with respect to intoxicating liquor imported or transported into the state. This the Attorney General concedes in his brief.

■ Report No. 1258, 74th Congress, prepared by Mr. Celler of the Committee of the House of Representatives on the Judiciary to accompany the Liquor Enforcement Act of 1936, 27 U.S.C.A. § 221 et seq., in part reads:

"The determination of whether an offense has been committed turns upon the existence of a State license or permit system, or a complete embargo on all bringing of liquor into the State. In the former case, it will be an offense to ship intoxicating liquor unaccompanied by a permit or license into the State; in the latter, it will be an offense merely to transport such liquor into the State.

"In the absence of either one of these two control methods, it would be exceedingly difficult to make effective administration of a Federal protective system feasible, since the legality of a liquor shipment into a State could be determined only by investigation of the use for which it was intended. The establishment of Federal machinery as elaborate as that of prohibition day would be required in the absence of State cooperation taking the form of one or the other of the control methods devised."

---

[1] Section 223(a), supra, reads as follows:

"Whoever shall import, bring, or transport any intoxicating liquor into any State in which all sales (except for scientific, sacramental, medicinal, or mechanical purposes) of intoxicating liquor containing more than 4 per centum of alcohol by volume are prohibited, otherwise than in the course of continuous interstate transportation through such State, or attempt so to do, or assist in so doing, shall: (1) If such liquor is not accompanied by such permit or permits, license or licenses therefor as are now or hereafter required by the laws of such State; or (2) if all importation, bringing, or transportation of intoxicating liquor into such State is prohibited by the laws thereof; be guilty of a misdemeanor and shall be fined not more than $1,-

000 or imprisoned not more than one year, or both."

[2] Segurola v. United States, 275 U.S. 106, 111, 112, 48 S.Ct. 77, 79, 72 L.Ed. 186; Adams v. New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575; Weeks v. United States, 232 U.S. 383, 396, 34 S. Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Winkle v. United States, 8 Cir., 291 F. 493, 496; Harkline v. United States, 8 Cir., 4 F.2d 526, 547; Tucker v. United States, 7 Cir., 299 F. 235, 237; Landwirth v. United States, 3 Cir., 299 F. 281, 283.

[3] O.S.1931, § 2596, 37 Okl.St.Ann. § 131; O.S.L.1933, ch. 153, §§ 2, 3, and 4 (approved and made effective by vote of the people July 11, 1933, 37 Okl.St. Ann. §§ 1, 82, 31); De Hasque v. Atchison, T. & S. F. Ry. Co., 68 Okl. 183, 173 P. 73, L.R.A.1918F, 259.

On February 27, 1937, the General Counsel of the Treasury Department rendered an opinion holding that the Liquor Enforcement Act of 1936 was inapplicable to Oklahoma because it had not adopted either one of the control methods.

The intention of Congress manifest by the language of Section 223(a), supra, when read in the light of the committee report is clear. It is to make it a federal offense to import or transport liquor into a dry state only when that state by its laws prohibits all importation or transportation of intoxicating liquor thereinto, or provides for and requires a permit or license to accompany intoxicating liquor that may be lawfully imported or transported thereinto.

Absent both of these control methods the federal officers charged with the enforcement of the Liquor Enforcement Act of 1936 would be required to make an investigation and ascertain the use intended to be made of intoxicating liquor being imported or transported into the dry state. It was to obviate this necessity that Congress made the federal act applicable only to dry states which had adopted one or the other of the two control methods. To require such cooperation on the part of dry states as a condition to federal assistance in the enforcement of its prohibitory laws is not unreasonable.

Section 2 of the Twenty-First Amendment U.S.C.A. Amend. 21, § 2 reads:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

It is urged that this provision is self-executing and makes the acts charged in the indictment herein a federal offense.

In Vance v. W. A. Vandercook Co., 170 U.S. 438, 444, 18 S.Ct. 674, 676, 42 L.Ed. 1100, the court said:

"Equally well established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the constitution of the United States to congress, and hence that a state law which denies such a right, or substantially interferes with or hampers the same is in conflict with the constitution of the United States."

The effect of Section 2 of the Twenty-First Amendment U.S.C.A. Amend. 21, § 2, was to qualify the Commerce Clause, U.S.C.A.Const. art. 1, § 8, cl. 3 so as to permit a state to prohibit or condition the importation or transportation of intoxicating liquor thereinto.[4]

Referring to Section 2 of the Twenty-First Amendment, U.S.C.A.Const. Amend. 21, § 2 the Supreme Court in State Board of Equalization of California v. Young's Market Co., 299 U.S. 59, 62, 57 S.Ct. 77, 78, 81 L.Ed. 38, said:

"The words used are apt to confer upon the state the power to forbid all importations which do not comply with the conditions which it prescribes."

In Sancho v. Corona Brewing Corp., 1 Cir., 89 F.2d 479, 481, the court said:

"The Twenty-First Amendment simply withdraws the exclusive control of Congress, under the commerce clause (article 1, § 8, cl. 3), over commerce in intoxicating liquors, when their importation is in violation of the laws of a state, territory, or possession of the United States."

While since the adoption of the Twenty-First Amendment a state may prohibit or condition the importation or transportation of intoxicating liquor thereinto, we do not think Section 2 of the Amendment can be regarded as a penal section.[5]

The judgment is reversed and the cause remanded with instructions to dismiss the indictment.

WILLIAMS, Circuit Judge (dissenting).

I am unable to concur in the holding that Section 2 of the Twenty-first Amendment, U.S.C.A.Const. Amend. 21, § 2, is not self-executing.

[4] Joseph Triner Corp. v. Arundel, D. C.Minn., 11 F.Supp. 145, 146, 147; General Sales & Liquor Co. v. Becker, D.C.Mo., 14 F.Supp. 348, 350; Riggins v. District Court of Salt Lake County, 89 Utah 183, 51 P.2d 645, 653.

[5] This construction accords with that given to analogous Congressional enactments. 37 Stat. 699, 49 Stat. 877, 27 U.S.C.A. § 122; McCormick & Co. v. Brown, 286 U.S. 131, 140, 52 S.Ct. 522, 525, 76 L.Ed. 1017, 87 A.L.R. 448; Clark Distilling Co. v. Western Md. Ry. Co., 242 U.S. 311, 323, 324, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A.1917B, 1218, Ann.Cas.1917B, 845.

The Senate of the United States, on May 28, 1938, passed Bill (H.R. 7508) to amend the Liquor Enforcement Act of 1936, so as to read as follows, to-wit:

"Sec. 3. Whoever shall import, bring, or transport any intoxicating liquor into any State in which all sales (except for scientific, sacramental, medicinal, or mechanical purposes) of intoxicating liquor containing more than 5 percent of alcohol by weight are prohibited, otherwise when in the course of continuous interstate transportation through such State, or attempt so to do, or assist in so doing, shall, if the importation, bringing, or transportation of such intoxicating liquor into, or the transportation thereof within, such State is prohibited by the laws thereof, be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than 1 year, or both. All importation, bringing, or transportation of intoxicating liquor into any such State for delivery or use therein, or through such State in the course of continuous interstate transportation, shall be evidenced by shipping documents in the manner and form prescribed by the Commissioner of Internal Revenue in regulations approved by the Secretary of the Treasury. Whenever the officers charged with the enforcement of this act shall discover intoxicating liquor in the course of importation, bringing, or transportation into any such State, such intoxicating liquor shall, except when it is consigned to a person entitled under the laws of such State to procure, possess, or dispose of such intoxicating liquor for scientific, sacramental, medicinal, or mechanical purposes, or except when it is consigned for delivery in another State and is in the course of continuous interstate transportation through the State in which discovered, and such consignment to such a person or for delivery in another State is evidenced by shipping documents as hereinbefore required, be presumed to be in the course of importation, bringing, or transportation into such State contrary to the provisions of this section, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

Congressional Record, Vol. 83, No. 110, Saturday, May 28, 1938, pages 10148 and 10149, is as follows:

"The bill was read the third time and passed.

"Mr. King. Mr. President, the report submitted by the Judiciary Committee on this bill contains, I believe, an important discussion of its provisions, and also of some features of the twenty-first amendment to the Constitution. I ask that it may be inserted in the Record as part of my remarks.

"The Presiding Officer. Is there objection? The Chair hears none, and it is so ordered.

"The report (No. 1872) submitted by Mr. King on May 11, 1938, is as follows:

"The Committee on the Judiciary, to whom was referred the bill (H. R. 7508) to amend the Liquor Enforcement Act of 1936, having considered the same, report it favorably with an amendment in the nature of a substitute, and as amended recommend that the bill do pass.

"The bill amends the Liquor Enforcement Act of 1936 in order to provide more effective protection of the so-called dry States against the importation of intoxicating liquor into such States.

\*       \*       \*       \*       \*       \*

"Although there are several States which do not permit the sale of whisky or wine for beverage purposes, none of these States has met the test laid down in the existing act which would entitle them to the protection afforded, because none of these States prohibits the importation of all intoxicating liquor and none of them has established a permit system for such importation as are permitted.

"The present bill, as it passed the House, greatly broadened the scope of the prohibition contained in the act of 1936, and made it a Federal offense to import any intoxicating liquor into a State for delivery or use therein in violation of State law. Your committee has given careful consideration to the question of whether this policy should be adopted, and has come to the conclusion that it should not.

"The history of the twenty-first amendment indicates that it was intended to turn over to the State entire control of the liquor traffic, and that the Federal Government's obligation to the States was to be restricted to protection of the dry States. The bill as it passed the House would completely reverse this policy.

"The plain terms of the bill as it passed the House would extend the scope of Federal protection to every State in the Union, whether wet or dry, with respect to the enforcement of any law which that State might have in connection with the importa-

tion, sale, use, etc., of intoxicating liquor. Under the language of the bill as it passed the House, it would be incumbent upon Federal officers to see that no liquor entered any one of the 48 states which was intended to be used in violation of any one of its laws. It would be necessary to prevent importation of liquor into a State if the liquor was, for example, intended to be sold to minors, sold on Sunday, sold on election day, or sold within a thousand yards of a church, in violation of State law. The Federal enforcement officers, therefore, would have to follow the shipment of imported liquor into the State to see that it was not sold in violation of State law. They would thus be participating in the enforcement of liquor laws which are essentially local, a policy which the people of the United States repudiated when they adopted the twenty-first amendment to the Constitution.

"Although the bill as it passed the House was couched, in general, in the language of the twenty-first amendment, it omits a vital comma, and the effect of that omission is to make the words 'in violation of the laws of said State' modify the words 'for delivery or use therein (i. e., in such State),' instead of modifying the words 'import, bring, or transport any intoxicating liquor into any State.' The result of the omission of this comma would be to make the bill cover both border and internal enforcement matters. The twenty-first amendment, on the other hand, is restricted to prohibiting importations into any State in violation of the importation laws of such State. It dealt, in other words, with border protection. That this is the proper construction of the amendment is indicated by the following language of the Supreme Court in the case of State Board v. Young's Market Co., 1936, 299 U.S. 59, 62, 57 S.Ct. 77, 81 L.Ed. 38:

" 'The amendment which "prohibited" the "transportation or importation" of intoxicating liquors into any state "in violation of the laws thereof," abrogated the right to import free, so far as concerns intoxicating liquors.'

"It has been urged that the bill as it passed the House was limited to border protection. Assuming without conceding that this construction is correct, the bill was still objectionable because it would still violate the purposes of the twenty-first amendment.

"Section 2 of the twenty-first amendment is not easy to understand, unless it is viewed in the light of its legislative history and general background. It reads as follows:

" 'The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.'

"On superficial examination, the language of this amendment might seem, to one not familiar with its background, broad enough to contemplate Federal liquor protection for all the States wet or dry. This is clearly not the fact. It should be remembered in this connection that the broad language of the sixteenth amendment has been much more narrowly construed than the verbiage of the amendment on its face would seem to justify. The sixteenth amendment [U.S.C.A.Const.Amend. 16] authorized Federal taxation of income 'from whatever source derived' but the courts have examined the amendment in the light of its background and the situation which it was designed to remedy and found a good many sources of income still unavailable for revenue purposes.

"The purpose which section 2 of the Twenty-first amendment was intended to accomplish is evidenced by the debates on the floor of the Senate in 1933, on the joint resolution which became the twenty-first amendment. In discussing section 2 Senator Blaine, the spokesman of the Senate Judiciary Committee, made the following statement:

" 'So, to assure the so-called dry States against the importation of intoxicating liquor into those States, it is proposed to write permanently into the Constitution a prohibition along that line.

" 'This proposal is restoring to the States, in effect, the right to regulate commerce respecting a single commodity—namely, intoxicating liquor. In other words, the State is not surrendering any power it possesses, but rather, by reason of this provision, in effect acquires powers that it has not at this time.

" 'The committee felt that since the Congress had acted and had definitely legislated upon this question, while that legislation had been sustained by the Supreme Court, yet it was sustained by a divided Court, and that we could well afford to guarantee to the so-called dry States the protection designed by Section 2' (Congressional Record, vol. 76, pt. IV, p. 4141).

"The following statement of Senator Blaine is also significant:

" 'The purpose of section 2 is to restore to the States by constitutional amendment absolute control in effect over interstate commerce affecting intoxicating liquors which enter the confines of the States. The State under section 2 may enact certain laws on intoxicating liquors, and section 2 at once gives such laws effect.' (Congressional Record, vol. 76, pt. IV, p. 4143).

"During the course of the debate a motion was made to strike out section 2. Senator Borah opposed the motion upon the ground, primarily, that without Section 2, the authority of the States, in the exercise of their police powers, to control the liquor traffic within their borders would be considerably impaired because they would then be required to look to the Webb-Kenyon Act as the source of their authority to regulate such traffic; and, since that act was sustained by a divided court after having been vetoed by President Taft on the recommendation of the Attorney General as being unconstitutional and having been debated against on the same ground by Mr. Justice Sutherland and Elihu Root when they were in the Senate, it was his view that the constitutionality of that act was still doubtful and it was not unlikely that it would be held unconstitutional if reconsidered by the Supreme Court. The motion to strike out section 2 was withdrawn during the course of Senator Borah's statement, after which Senator Borah concluded his remarks with the statement that:

" 'If we are to have what we are now promised, local self-government, State rights, the right of the people of the respective States to adopt and enjoy their own policies, we must have some other method, some other provisions of the Constitution, than those which existed prior to the adoption of the eighteenth amendment. [U.S.C.A. Const. Amend. 18].

" 'All this was sought to be remedied by the Webb-Kenyon Act, and I am very glad indeed the able Senator from Arkansas (Mr. Robinson) has seen fit to recognize the justice and fairness to the States of incorporating it permanently in the Constitution of the United States' (Congressional Record, vol. 76, pt. IV, p. 4172).

"It is particularly significant that the joint resolution originally contained as section 3 a provision that would have given Congress concurrent power with the States to regulate and prohibit the sale of liquor within the States for immediate consumption. This was stricken because, as Senator Wagner said, it did not 'restore to the States responsibility for their local liquor problems' and did not 'withdraw the Federal Government from the field of local police regulations into which it has trespassed.' He stated that section 3 would perpetuate the intrusion of a liquor problem into the national sphere, and viewing it from a practical standpoint that—

" 'Any realistic calculation will reveal that the agency will be larger, more expensive, and more subject to abuse and corruption than the Bureau of Prohibition. The kind of regulation which may be fairly anticipated under section 3 cannot possibly be administered except by a genuine police force of thousands upon thousands of officers. The Federal Government has never been equipped with such a force, and it cannot be so equipped unless we alter the nature of our Government beyond recognition.

\*  \*  \*  \*  \*  \*

" 'We know perfectly well that the grant of the power "to regulate or prohibit," as defined in section 3, will lead inevitably to State reliance upon the Federal Government to enforce the local laws of the dry communities' (Congressional Record, vol. 76, pt. IV, p. 4146).

"Section 3 was deleted, and it is, therefore, evident that the Congress intended by the twenty-first amendment, as adopted, to return the complete control of the liquor traffic to the States. The Federal Government's participation, if any, in the liquor problem from a national standpoint was to be limited to protection for the dry States. As Senator Borah stated during the debates:

" 'I have no doubt, if the amendment is adopted, that it will be *within the power of Congress,* as well as within the *power of the State,* to punish those who ship liquor into a dry State' (Congressional Record, pt. IV, p. 4172). (Italics supplied.)

"Thus, it will be observed, that the enactment of the present bill as it passed the House, whether in a form requiring border protection only or both border and internal protection, would violate the purpose of the twenty-first amendment, since it would protect wet as well as dry States. It is particularly noteworthy that some of the State laws, which the Federal Government would be required to enforce under the bill as it passed the House, would be laws discrimin-

ating against importations of liquor from sister States; that is, laws which prohibit or penalize the importation of liquor enacted by States which permit the manufacture and sale of liquor within their borders. As an example, the Supreme Court in State Board v. Young's Market Co., 1936, 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38, affirmed the validity under the twenty-first amendment of a State statute imposing a license fee of $500 per annum on the privilege of importing beer, but without imposing a similar exaction upon wholesalers of local beer. Under the bill as it passed the House the Federal Government would have to enforce such a law.

"A number of wet States have State-owned monopolies on all sales of liquor within the State and prohibit deliveries to anyone other than the State monopoly. It will be seen, therefore, that the bill as it passed the House would require the Federal Government to assist these monopoly States in enforcing their laws prohibiting deliveries to anyone other than the State monopoly, with the result that the Federal Government would not be protecting a dry State, but would be fostering a monopoly in a wet State.

"As an indication of the expense and administrative difficulties which would be involved under the bill as it passed the House, there is set out below an excerpt from a letter from the Acting Secretary of the Treasury to the chairman of the Senate Committee on the Judiciary:

"'The enforcement problems of the eighteenth amendment, which prohibited entirely the traffic in intoxicating liquors for beverage purposes, are well known. It is believed, however, that under H.R. 7508, the enforcement difficulties which can reasonably be anticipated would be greater in scope. That proposal contemplates detailed Federal regulation and supervision within the States of traffic in a commodity which is no longer illegal and consequently violations of regulatory laws would be more difficult to detect. In other words, it would seem to be more difficult from an enforcement standpoint to regulate and supervise traffic which is legal than to enforce total prohibition. As a practical proposition it would be virtually impossible for the Federal Government to enforce H.R. 7508.

"'Furthermore, in order to supervise the delivery and use of liquor in the 48 states, which, of course, would create an enforcement problem of great magnitude, it would be necessary to establish a Federal enforcement agency. Any real estimate of the size of such an agency will reveal that it would necessarily be much larger and more expensive to maintain than the Federal machinery set up to enforce the eighteenth amendment. Such a great increase in enforcement personnel would require a great increase in the appropriations for the enforcement unit, not only for salaries but for equipment, traveling expenses, etc.'

\* \* \* \* \* \*

"Your committee recommend an amendment, in the nature of a substitute, which is designed to afford adequate protection to dry States. Under the amendment recommended by the committee, the requirements of existing law that a permit system be established or that all importations be prohibited are eliminated, and protection will be afforded to any State which prohibits all sales (except for scientific, sacramental, medicinal, or mechanical purposes) of intoxicating liquor containing more than 5 percent of alcohol by weight. Any person who imports any intoxicating liquor into such a State (except in the course of continuous transportation through the State), will, if the State law prohibits the importation of such liquor or its transportation within the State, be guilty of a Federal offense and will be subject to fine and imprisonment. In order to provide a practicable method of enforcement, it requires that all shipments of intoxicating liquor into or through such a State be evidenced by shipping documents in the manner and form prescribed by the Commissioner of Internal Revenue in regulations approved by the Secretary of the Treasury. These shipping documents will in effect be substitutes for the State permits accompanying liquor importations which the law now requires as a prerequisite to Federal protection to dry States. If enforcement officers discover intoxicating liquor in the course of importation into such a State, a rebuttable presumption is created that the importation is illegal unless (1) the liquor is consigned to a person entitled under the laws of the State to procure, possess, or dispose of it, or is consigned for delivery in another State; and (2) is accompanied by the shipping documents required under the act."

In William Mahoney, Liquor Control Commissioner, v. Joseph Triner Corporation, 58 S.Ct. 952, 82 L.Ed. ——, decided by the Supreme Court of the United States, May 23, 1938, Section 2 of the Twenty-first Amendment, U.S.C.A.Const. Amend. 21, § 2

was construed, in which it was said (page 953):

"The sole contention of Joseph Triner Corporation is that the statute violated the equal protection clause. [Fourteenth Amendment] The state officials insist that the provision of the statute is a reasonable regulation of the liquor traffic; and also, that since the adoption of the Twenty-first Amendment [U.S.C.A.Const. Amend. 21], the equal protection clause is not applicable to imported intoxicating liquor. As we are of opinion that *the latter contention is sound,* we shall not discuss whether the statutory provision is a reasonable regulation of the liquor traffic." (Italics supplied.)

\* \* \*

In Joseph Triner Corporation v. Arundel et al., Frank McCormick, Inc., v. Arundel, D.C., 11 F.Supp. 145; Joseph Triner Corporation v. Mahoney, D.C., 20 F.Supp. 1019; Mahoney v. Joseph Triner Corporation, 58 S.Ct. 952, 82 L.Ed. ——, the case being heard in the trial court by three judges, under section 266 of the Judicial Code, 28 U.S.C.A. § 380 (Sanborn, Circuit Judge, and Nordbye and Joyce, District Judges, sitting) decided on June 29, 1935, the case being reversed by the Supreme Court of the United States on May 23, 1938 insofar as it was held in the lower court that the Fourteenth Amendment U.S.C.A. Amend. 14, applied to the limitations of Section 2 of the Twenty-first Amendment, U.S.C.A.Const. Amend. 21, § 2 it is said by the said three-judge court (page 146):

"The purpose of the provision [Section 2, Twenty-first Amendment] referred to *was to make it impossible for Congress to permit the transportation or importation into any state, territory, or possession of the United States of intoxicating liquors in violation of the laws of the state, territory, or possession.*" (Italics supplied.)

This holding is not disturbed by the Supreme Court of the United States. William Mahoney, Liquor Control Commissioner, v. Joseph Triner Corporation, supra.

In General Sales & Liquor Co. v. Becker, D.C., 14 F.Supp. 348, heard by three judges under Section 266 of the Judicial Code, 28 U.S.C.A. § 380, decided February 10, 1936, (Faris, Circuit Judge, Davis and Moore, District Judges, sitting), it is said (page 350):

"The adoption of the Twenty-first Amendment has without doubt limited and qualified the commerce clause to the extent that state laws, regulating the importation of liquor into a state, place no prohibited burden upon commerce."

In Riggins v. District Court of Salt Lake County, 89 Utah 183, 51 P.2d 645, it is said (page 653):

"Such provision [Section 2 of the Twenty-first Amendment, U.S.C.A.Const. Amend. 21, § 2] is calculated to enlarge rather than to restrict the powers of the various states of the Union to control intoxicating liquors. One of the purposes of the Twenty-First Amendment to the Federal Constitution would seem to be to nullify the doctrine announced in the case of Vance v. W. A. Vandercook Co., 170 U.S. 438, 18 S.Ct. 674, 676, 42 L.Ed. 1100 \* \* \*."

The quoted excerpts from Joseph Triner Corporation v. Arundel et al., D.C., 11 F. Supp. 145, General Sales & Liquor Co. v. Becker, supra, and Riggins v. District Court of Salt Lake County, supra, are to the effect that said Section 2 is self-executing.

In Guinn et al. v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L. R.A.1916A, 1124, it is held that the Fifteenth Amendment, U.S.C.A.Const. Amend. 15 which declares that the "right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude" is *self-executing* and reached without legislative action the conditions of discrimination against which it was aimed.

In Clyatt v. United States, 197 U.S. 207, 25 S.Ct. 429, 49 L.Ed. 726, it is declared that the Thirteenth Amendment, U.S.C.A.Const. Amend. 13, which declares that "neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction" is self-executing without any ancillary legislation, so far as its terms are applicable to any existing state of circumstances.

See, also, United States v. Amsden, D. C., 6 F. 819, Whitman v. National Bank of Oxford, 176 U.S. 559, 20 S.Ct. 477, 44 L. Ed. 590, and Ex parte McNaught, 23 Okl. 285, 100 P. 27, and cases therein cited.

In Davis v. Burke, 179 U.S. 399, 21 S. Ct. 210, 45 L.Ed. 249, it is said (page 211):

"(1) The Constitution of Idaho contains the following clause: 'Art. 1, sec. 8.

No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury, or on information of the public prosecutor, after a commitment by a magistrate.' Appellant's answer to this is: (1) That the provision is not self-executing. * * *

"(2) But we are also of opinion that for the purposes of this case the provision of the Idaho Constitution must be deemed self-executing. The rule is thus stated by Judge Cooley in his work upon Constitutional limitations (p. 99): * * * ."

In Illinois Cent. R. Co.' v. Ihlenberg, 6 Cir., 75 F. 873, 34 L.R.A. 393, in opinion by Taft and Lurton, Circuit Judges, and Severens, District Judge, it is held that the provision in Const.1890 Miss. Section 193, that "knowledge by any employe injured, of the defective or unsafe character or condition of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby," is self-executing.

In the opinion it is said (page 879):

"Our construction of the clause of the constitution as self-executing is quite in accordance with the weight of the authorities. Willis v. Mabon, 48 Minn. 140, 50 N.W. 1110, 16 L.R.A. 281, 31 Am.St.Rep. 626; Johnson v. Parkersburg, 16 W.Va. 402, [27 Am.Rep. 779]; Washingtonian Home v. City of Chicago, 157 Ill. 414, 41 N. E. 893 [29 L.R.A. 798]; People v. Hoge, 55 Cal. 612; State v. Babcock, 19 Neb. ·230, 27 N.W. 98; Pierce v. Com., 104 Pa. 150; Ex parte Snyder, 64 Mo. 58; People v. Bradley, 60 Ill. 390; Yerger v. Rains, 4 Humph. (Tenn.) 259; Thompson v. Bank, 19 Nev. 103, 7 P. 68 [3 Am.St.Rep. 797]."

In Graves v. Eubank, 205 Ala. 174, 87 So. 587, it is held that the Nineteenth Amendment to the United States Constitution, U.S.C.A.Const. Amend 19, providing that the right to vote shall not be denied on account of sex, was self-executing, citing Neal v. Delaware, 103 U.S. 370, 26 L. Ed. 567, Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, and Guinn v. United States, supra.

Said Section 2 of the Twenty-first Amendment to· the Constitution of the United States, U.S.C.A.Const. Amend. 21, § 2, being self-executing, it is effective without additional legislation as much so as the Thirteenth, Fifteenth, and Nineteenth Amendments, U.S.C.A.Const. Amends. 13, 15, 19.

It is neither within the power of the Congress of the United States to modify or suspend or limit the self-executing mandatory provision of said Section 2 of the Twenty-first Amendment, nor to limit said self-executing provision by incorporating such provision in the Liquor Enforcement Act of June 25, 1936 (Section 223, Chapter 9, 27 U.S.C.A. Chapter 815, Laws Second Session, 74th Congress, 49 Stat.1928).

Under the laws of the state of Oklahoma, as the same then existed, it is unlawful, except for scientific, sacramental, medicinal, or mechanical purposes, to import, bring or transport any intoxicating liquor into the state of Oklahoma for delivery or use therein, with no provision for permit or permits, license or licenses to be issued under state authority to accompany such importation, bringing, or transportation into said state.[1] Said Act of June 25, 1936, imposes a limitation or condition which violates said Section 2 of the Twenty-first Amendment, and the limiting provision "if such liquor is not accompanied by such permit or permits, license or licenses therefor as are now or hereafter required by the laws of such State," being repugnant to said Section 2 of the Twenty-first Amendment, must, in such event, under the status of this record, fall, leaving said section of said Act of June 25, 1936, to read as follows:

"(a) Whoever shall import, bring, or transport any intoxicating liquor into any

---

[1] Sec. 7, Art. 1, Const.Okl. Okl.St.Ann. Const. art. 1, § 7; Sec. 46, Art. 25, Williams' Annotated Const.Okl.1912; Section 2 of Enabling Act of Oklahoma; Ex parte Cain, 20 Okl. 125, 93 P. 974; Oklahoma State Enforcing Act, March 24, 1908, Chapter 69, pp. 594–614; State ex rel. v. Hooker, 22 Okl. 712, 98 P. 964; State v. Hoffer, 3 Okl.Cr. 340, 106 P. 533; Oklahoma Statutes, Ann., title 37, § 1 note, R.L.1910, § 3605; Laws 1933, c. 153, p. 338, § 2; Chapter 153. Oklahoma Session Laws, 1933, pp. 338–345, 37 Okl.St.Ann. §§ 31, 82, 151 et seq.; Sections 2596, 2597, 2598, Oklahoma Statutes, 1931, 37 Okl.St.Ann. §§ 131, 142, 21 Okl.St.Ann. § 141; Rules and Regulations for the Sale of Denatured Alcohol and of Alcohol for Scientific Purposes, filed with the Secretary of State, September 28, A.D.1931; Section 6982, Compiled Oklahoma Statutes; Chapter 34, Laws of Oklahoma, 1929, 37 Okl.St.Ann. § 131; Sections 2600, 2604, 2605, 2606, Oklahoma Statutes, 1931, 37 Okl.St.Ann. §§ 37, 33–35.

128

State in which all sales (except for scientific, sacramental, medicinal, or mechanical purposes) of intoxicating liquor containing more than 4 per centum of alcohol by volume are prohibited, otherwise than in the course of continuous interstate transportation through such State, or attempt so to do, or assist in so doing, shall: \* \* \* or if all importation, bringing, or transportation of intoxicating liquor into such state is prohibited by the laws thereof; be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than one year, or both.

. "(b) In order to determine whether anyone importing, bringing, or transporting intoxicating liquor into any State, or anyone attempting so to do, or assisting in so doing, is acting in violation of the provisions of this chapter, the definition of intoxicating liquor contained in the laws of such State shall be applied, but only to the extent that sales of such intoxicating liquor (except for scientific, sacramental, medicinal, and mechanical purposes) are prohibited in such State. (June 25, 1936, c. 815, § 3, 49 Stat.1928)." 27 U.S.C.A. § 223(a).

Said Act is entitled "An Act To enforce the twenty-first amendment" and provides for it to be cited as "The Liquor Enforcement Act of 1936." 27 U.S.C.A. § 221. Under Guinn et al. v. United States, supra, and State v. Duncan, 265 Mo. 26, 175 S.W. 940, Ann.Cas.1916D, 1, though said part of the act falls as being unconstitutional, the remaining part stands.

The judgment of the lower court should be affirmed.